## MILLER *v.* STATE, 33 Miss. R., 356.

### GAMING.

Under the laws of this state, betting on the unknown result of an election which has already been held, is an indictable offense.

It is not necessary, as a general rule, to prove the offense to have been committed on the very day named in the indictment. But whenever time is of the essence of the offence, or a necessary part of the description of it, the time must be proved as laid.

Time is not essential or descriptive of the offense of betting on an election.

Objection to an illegal grand jury may be made by motion in arrest of judgment.[1]

In error from the circuit court of Attala county. Hon. E. G. HENRY, J.

*J. A. P. Campbell,* for plaintiff in error.

The record of this case presents two questions. First, upon the bill of exceptions; and second, upon the motion in arrest of judgment.

In the court below defendant was on trial, under an indictment for gaming, which charged that on the 28th day of

[1] This provision has been modified by statute (Revised Code of 1857, p. 449, art. 131), which makes the empanelling of a grand jury conclusive evidence of competency and qualification; but permits exception to the array for fraud.

October, A. D. 1856, he made a bet on the Presidential election, to be held on the 4th of November, and the proof was, that the defendant, on the 6th day of November, A. D. 1856, after the election mentioned in the indictment had been held, made the bet mentioned. Upon this state of facts, defendant asked the court to charge the jury, that if the bet was made after the election had been held, and not upon an election to be held, they should acquit the defendant. This instruction was refused, and the jury instructed to find defendant guilty, if the bet was made either before or after the election. This action of the court is the first error assigned.

It is true as a general rule, that time is not necessary to be proved precisely as laid in the indictment, but it is equally true as a universal rule that, whenever time is of the essence of the offense, or is descriptive of it, it must be proved, if not precisely as laid, at least so far as may be necessary to describe the offense. 2 Russel on Crimes, 802 ; Wharton's Cr. Law, 220.

In the first place, I assume that it was not a violation of our statute against gaming to bet on an election after it has been held; and in support of this position, refer the court to the case of The State v. Mahare and Henry, 2 Ala., 340, where this point has been decided in accordance with this view.

In the next place, if it be an indictable offense to bet on the unknown result of an election which has been held, I assume that the party indicted must be charged with this offense, otherwise he cannot be convicted of it. There is an obvious difference between betting on an election to be held, and betting on one which has been held. The same difference which exists between the future and the past. The *allegata* and *probata* must correspond, else how can a defendant prepare his defense, or protect himself against a second prosecution for the same offense ?

The next error assigned is the action of the court below in overruling defendant's motion in arrest of judgment, and to quash the indictment.

This motion was based on the fact, shown by the record of the organization of the court, at which the indictment in this

case was found and presented this indictment, was composed of nineteen men.

I contend that a grand jury composed of nineteen men is an illegal and unauthorized body, and that all their acts are void.

It seems to be well settled, that if one of a grand jury be an incompetent and illegal member, that vitiates the whole panel, and for the obvious reason, that twelve must concur to find a bill; and for all that can be known the illegal member may be the very one without whom the requisite number to find a bill could not be procured. Barney v. State, 12 S. & M., 68. Until 1854, a grand jury could not consist of a greater number than eighteen men. Hutch. Code, 887.

The law of 1854, Session Acts, p. 468, and of 1856, Session Acts, 26, provide that twenty men be summoned to serve as grand jurors. The second section provides that they be empaneled, sworn, and charged as before, " and in case a sufficient number to constitute a grand jury shall not attend," etc. This suggests the question, what is a sufficient number to constitute a grand jury? And as the law itself does not furnish an answer, we are compelled to resort to the old law, Hutch. Code, 887, to ascertain the number, as well as how they are to be " empaneled, sworn, and charged." It will be observed that the act of 1854 does not repeal the old law generally, but only in so far as it expressly enacts in opposition to it, and of course it will be held that the old law is repealed by the new only in so far as it expressly provides a rule different from the old. It will doubtless be replied, that the object of the law was to have summoned twenty men, any number of whom over twelve might compose a grand jury? To which I rejoin, that if such was the object, it might easily have been expressed in framing the law, and if such was the object it was not manifested by the language of the law. The act of 1854 does not say that the twenty men summoned shall compose the grand jury, but says, they shall be " summoned to serve," etc. If the twenty summoned are to compose the grand jury, it follows that a less number than twenty cannot be empaneled, sworn, and charged, because a second section provides, that if a suffi-

cient number to constitute a grand jury shall not attend, or in case any be excused by the court, others are to be at once summoned to fill their places. It seems to me to be plain, that a grand jury composed of more than eighteen men, is not authorized by law, or else a less number than twenty men cannot be empaneled as a grand jury. One or the other of these propositions must be admitted. For I do not think that authority can be found in the act of 1854 for the court to empanel any number it may see fit less than twenty, and more than twelve. The act itself does not say this, nor anything like it, and it would be interpolation to construe it to mean this. If I am correct in any of the propositions for which I contend, the judgment of the court below in this case must be reversed.

*D. C. Glenn*, attorney general.

SMITH, C. J.:

This was a conviction, in the circuit court of Attala, for betting on an election. The indictment under which the defendant was tried, charged that said defendant, " on the 28th day of October, 1856, bet a fifty-dollar bank note against a horse, with one M. C. Sharkey, upon the result of a certain election, to be held on the 4th day of November, A. D. 1856, in the state of Kentucky, for " Presidential electors," etc. On the trial, it was proved that the bet was made on the 5th or 6th day of November, 1856, and, of course, after the Presidential election had been held in the state of Kentucky. Upon this evidence, under the instructions of the court, the defendant was found guilty and sentenced. Whereupon he prosecuted this writ of error.

On the trial, at the instance of the prosecuting attorney, the court charged, amongst other instructions given to the jury, that " if they believed, from the evidence, the bet was made, either before or after the election mentioned in the indictment, within twelve months next before the finding of the indictment, the indictment will be sustained." And the court refused the instructions requested by the defendant, which were in the words following, to wit:

" If the jury believe, from the evidence, that the bet was

made after the election was held, and after the time laid in the indictment, they should find the defendant not guilty."

" If they believe the bet was made after the time laid in the indictment, they will acquit."

And " if they believe the bet was made after the election had been held, they will acquit."

The last instruction raises the question, whether a bet made upon the result of an election, after the election was held, is a violation of the statute under which the indictment was framed; and which applies to all persons who "shall wager or bet, or who shall promote or encourage the wagering or betting of any money, or other valuable thing, upon any cock-fight or duel, or upon the result of any election, of any kind soever."

This language is certainly broad, and is sufficiently comprehensive to include any wager or bet upon the uncertain result of any election, whether made before, or subsequent to, the time of holding such election. The evils resulting to the common-wealth may be, and doubtless are, greater from the practice of betting upon future elections, than which would result from the same practice if confined to elections which had previously taken place. But, for that reason alone, we are not authorized to restrict the plain and express language of the statute to the practice of betting on elections to be held after the bets were made. And that, too, in the face of the manifest object of the legislature, which was to suppress entirely the evil practice of gaming of all kinds. In our opinion, therefore, the court was correct in refusing the instructions.

Generally, it is not incumbent upon the prosecution to prove that the offense charged was committed on the precise day alleged in the indictment. It is sufficient, as a general rule, that the offense charged be proved to have been committed before the finding of the indictment. But there are some exceptions to this rule. And it is laid down, that whenever time is of the essence of the offense, or a necessary ingredient in the description of it, the time must be proved as laid in the indictment, at least so far as may be necessary to identify the offense charged. Wharton's Crim. Law, 220 ; 2 Russ. on Crimes, 802 ;

Archbold's Cr. Plead., 90.    And counsel insist that the present case comes within this exception to the rule.

A bet on the result of a future election, it is argued, is materially different from a bet on the result of an election which has been held.    And hence, that the time stated in the indictment is an essential part of the description, so as to distinguish the one from the other.

This argument proceeds upon the assumption that the statute has created two distinct offenses, one of which is committed when a bet is made on the result of an election to be held after the bet is made ; and the other, when a party bets upon the unknown result of an election previously.    In our opinion, the statute draws no such distinction.    It has created but a single offense, which is consummated where a party bets on the result of an election, either before or after it has been held.    Upon this construction of the necessary ingredient in the description of it.    And it follows, hence, that the words " to be," inserted in the indictment before the words " held on the 4th day," etc., which designate the election as a future event, were mere surplusage, and might have been stricken out without affecting the charge, or disregarding in the proof.    In our opinion, therefore, there was no error in granting or refusing the instructions requested by either party.

It appears from the record, that nineteen persons, by order of the court, were empaneled and sworn as grand jurors for the term at which the indictment was found.    This is made the ground of another exception in this court.    The objection was made in the court below by motion in arrest of judgment.

Under the law as it existed prior to the adoption of the act approved March 1st, 1854, and of the act of the 20th of February, 1856, which extended the provisions of the former to all of the counties in the state, the circuit judge, at his discretion, might select any number of the venire in attendance on court, not under nor over eighteen, to be drawn by lot to serve as grand jurors.

We do not doubt, if the former law be still in force, that a grand jury composed of less than thirteen grand jurors, or more than eighteen, would be illegal, and its acts void.    It hence be-

comes necessary to determine whether that law, in respect to the number of which a grand jury should be composed, has, by the acts above referred to, been altered or repealed.

The act of 1854, local in its operation, but made general by that of 1856, is silent as to the number of the grand jury. And it does not in express terms repeal the provisions of the sixth section of the statute of 1830, which declares that the grand jury shall be constituted on not less than thirteen nor more than eighteen persons. It seems, therefore, justly inferable, that the legislature, in requiring the sheriff to summon twenty men to serve as grand jurors, did not thereby intend to designate the number of which the grand jury should be composed, but only to provide a body of men out of whom a grand jury should be selected. Indeed the act itself leaves this a matter of inference. The second section of the act directs that the grand jurors thus summoned should be empaneled, sworn, and charged in the manner then prescribed by law. Another consideration renders this construction still more probable. It is evident upon an examination of the language employed in the same section, that the legislature proceeded upon the supposition that the number of the grand jury was prescribed in the act itself, or by some antecedent law, which it was not its intention to repeal. It directs, that in case a sufficient number shall not be in attendance to constitute a grand jury, it shall be lawful immediately to summon others. This language appears to indicate, and very clearly too, the whole number (twenty) directed to be summoned should not be requisite to the due constitution of the grand jury. For if the legislature, by providing that twenty men should be selected and summoned by the sheriff, intended to fix the number of the grand jury at twenty, it would have directed that if any of the twenty summoned should fail to attend, that others to supply their places should be summoned. And this construction of the statute was applied in the case of Weeks v. State, 31 Miss. R., 490.

The statute, as above remarked, is silent in reference to the number of the grand jury. It results, therefore, from the decisions in Weeks' case, that if the act of 1830 in this respect be repealed, the legislature intended to leave it to the discretion

of the judge to order any number of persons, not exceeding twenty, to be empaneled and sworn as a grand jury. It is unnecessary to say that this construction is not to be tolerated. Upon every view which we can take of the subject, it is our opinion that, in the act under consideration, the legislature did not intend to interfere with the pre-existing law, which designated the number of which the grand jury should be composed.

The result of this conclusion is, that the grand jury who found the indictment in this case were illegally constituted. And hence, that the judgment should have been arrested, on the motion of the plaintiff in error.