### McCarty *v*. State, 37 Miss. Rep., 411.

#### Placing Obstructions on Railroads.

All laws and parts of laws enacted prior to the adoption of the Revised Code of 1857, and in conflict therewith, were, by articles 2 and 3, page 43, of the Code, repealed. Therefore, so much of the charter of the Mississippi Central Railroad Company as makes provisions for the punishment of persons placing obstructions on the track of the road, being a public law, and a matter of special provision in articles 163 and 164, p. 600, of the Revised Code, is superseded and repealed.

An indictment that charges the accused with "wilfully and maliciously placing an obstruction on" a certain railroad named, "which obstruction was of such a nature to endanger the lives of persons being carried on said road," is sufficient under the Rev. Code, p. 600, art. 164.

The day on which an offense is charged to have been committed is immaterial, except in those cases where time is of the essence of the offense, or a necessary ingredient in its description; and hence in a case not within the above exception, proof that the offense was committed either before or after the day laid in the indictment, but before the indictment was found, and within the period prescribed by the statute of limitations, is sufficient.

Error to LaFayette circuit court. Cushman, J.

The nature of the indictment is fully set out in the opinion of the court.

The plaintiff in error moved the court to quash the first count in the indictment, because the clause in the charter of the Mississippi Central Railroad Company, upon which it was based, was not in force, but had been superseded and repealed; and the court overruled the motion, and the plaintiff in error excepted.

The plaintiff in error was then arraigned, and pleaded not guilty.

The state proved, by Mr. Smith, that he went from Abbeville

to Mount Vernon church, a distance of one mile, on a hand-car, and got there at 8 o'clock P. M. of the 17th of September, 1858. He stood by with a lantern, and saw two negroes, whom he had brought with him, remove the hand-car thirty-one feet from the road. He had the hand-car well scotched with three blocks, and so situated that if the blocks had been removed, the hand-car would have run into a ditch, and could not have run across a bridge on to the road. This was in La Fayette county, Mississippi. Smith then went to church, and saw McCarty, and asked him for a segar, which McCarty gave him. McCarty then asked him if he could ride back to Abbeville with him on the hand-car, and he replied that he had quit carrying such stock last week; and that he, witness, then went to a spring, and as he turned off, McCarty muttered something that he did not distinctly hear. Witness remained at the spring some twenty minutes, and returned and went into church; McCarty came into church, and remained some fifteen or twenty minutes, and went out. In returning from church, after the collision, McCarty said he had told Morgan Williams he expected there would be a collision. The church is one hundred and eighty yards from the railroad. The moon did not rise until after the collision; there was a protracted meeting going on at the church. Witness had gone to the church six or seven nights in succession, in the hand-car, and had put it in the same place, and scotched it in the same way, and that McCarty had not been at church before that night. Witness was in the employment of the railroad company, as overseer of the section hands, and had the use of the hand-car to go up and down the road. He left the negroes at the church when he went to the spring; knew very little of the whereabouts of the negroes while at church. It would have required three stout men to have placed the car-wheels on the track, but one man could run the car across the bridge on the track.

Miller testified that Smith and McCarty came into the store where he was clerk, next morning after the collision; that after Smith had left, McCarty said he knew who Smith suspected; that he suspected Couch and Vaughan; that he, McCarty,

saw Couch and Vaughan coming from the direction of the railroad a short time before the killing.

Dogan, for the state, testified that he came with Smith to church in the hand-car; had come six nights in succession with him; that three negroes came with them; that the car was removed thirty-five feet from the railroad, and well scotched. McCarty told witness that night, after the collision, that he knew the hand-car was on the track; that he made no reply to that remark of McCarty's. Dogan was then asked by prisoner's counsel why he did not make some reply, as he knew the hand-car had been removed? Dogan then said he did say to McCarty, that if the car was on the road, somebody put it there. Dogan was then asked "if he did not say before the committing court that McCarty said he told Morgan Williams that he expected the hand-car was on the road, and if Smith did not take it away, it would be smashed up?" and he answered, "Yes." He was then asked, "Is that what you say now?" and he answered, "Yes."

Owens, for the state, testified that he saw McCarty start off in the direction where the collision took place on the railroad; he was gone about half an hour; but witness was in church, and did not see him proceed beyond the corner of the church, and does not know what direction he then took.

Farr, for the state, testified that he saw McCarty pass the first window, passing rather in the direction of the railroad, but did not see him after he passed the second window; and shortly afterwards saw him returning; that others were passing about, and in the direction of the railroad. Witness was one of a mob who attempted to drive McCarty from Abbeville.

R. Owen, for the state, testified that he and McCarty were sitting together when they heard the collision take place, and McCarty remarked to him, that he expected the hand-car was smashed up; that this remark was in reply to a remark which he, witness, made, that he expected they had run over a horse or a cow.

Meadows, for the state, testified that he saw McCarty going off in the direction of the railroad; he saw him going in that direction for about fifty yards; he was gone about fifteen min-

utes; and when he returned, heard him say to two or three persons that the hand-car was on the road; that this remark of McCarty's made no impression upon him; he did not believe McCarty.

The state then proved by Robinson that the railroad was obstructed, and the obstruction was such as to endanger life or limb.

Long, for the state, proved that Vaughan was in church the whole evening, and did not go in the direction of the railroad.

The state proved by Couch that he was one of twenty citizens who determined to drive McCarty from Abbeville; that McCarty left the neighborhood, and did not return until the night of the collision; that he and Vaughan did not go in the direction of the railroad.

It was admitted that the Mississippi Central Railroad Company was chartered, and was running its cars, &c.

After the testimony was closed, the accused moved to exclude the testimony, because all that was proved occurred on the 7th of September, after the time laid in the indictment; but the jury refused to exclude the testimony, and the prisoner excepted.

The jury found the accused guilty on the first and second counts in the indictment, and not guilty on the third count of the indictment. The prisoner then moved for a new trial, and the motion was overruled, whereupon he excepted, and sued out this writ of error.

*H. A. Barr*, for plaintiff in error.

1. The first count of the indictment should have been quashed, because it is based on the 19th section of the charter of the Holly Springs Railroad Company, which is incorporated into and made a part of the charter of the Mississippi Central Railroad Company, and which has been superseded and repealed by article 164, page 600, of the Rev. Code of 1857.

The Code of 1857, arts. 2, 3, page 43, provides "that all acts and parts of acts, the subjects whereof are revised or consolidated and re-enacted in this revised code, or repugnant to provisions therein, shall be, and the same are hereby, repealed."

The plaintiff in error did not apply for a *supersedeas*. Hence he was sent to the penitentiary, and has been confined there for three months. If he was rightfully convicted under the second count in the indictment, he has already suffered all the imprisonment that the state can legally impose on him.

2. The testimony should have been excluded. Any day anterior, but not subsequent, to the day alleged in the indictment, might have been shown. Oliver v. State, 5 How., 14; Rex v. Charnox, Holt, 301; 1 Salk., 288; 9 St. Tr., 58–605, 542–552; Foster, 7, 8; 9 East, 157; 1 Phill. Ev., 203; Rex v. Levy, 2 Stark. N. T., 458.

3. The evidence was only circumstantial. The rule is, that the proof ought to be not only consistent with the prisoner's guilt, but inconsistent with any other rational conclusion. 1 Greenleaf Ev., § 34.

*T. J. Wharton,* attorney general.

1. The action of the court in sustaining the first count of the indictment was correct. The section of the statute under which it was framed is not repealed by the Revised Code, 600, art. 164. The act and this provision of the code are exactly alike, and the former is not repealed only by implication ; *and that* cannot be, because statutes are not considered repealed by implication, unless the repugnancy between the new provision and a former statute be plain and unavoidable. 1 Kent's Com., 517, note *b* (8th ed.).

2. The second ground of error is untenable. The offense with which the prisoner is charged, is not one of which time is the essence, therefore a variance in the time of the commission of the offense as laid in the indictment, and as proved, is immaterial. The Rev. Code, 616, art. 266, provides, "that no indictment for any offense shall be holden insufficient, for omitting to state the time at which the offense was committed, in any case where time is of the essence of the offense; nor for stating the time imperfectly, nor for stating the offense to have been committed on a day subsequent to the finding of the indictment, or on an impossible day, or a day that never happened," &c.

3. The verdict will not be disturbed unless opposed by a preponderance of the evidence, or based upon no evidence. Ciceley's case, 13 S. & M., 202.

Handy, J. :

This was a prosecution against the plaintiff in error, for placing obstructions on the Mississippi Central Railroad.

The indictment contained three counts: the first charging, that the defendant "wilfully and maliciously did place an obstruction on said railroad, which obstruction was then and there of such a nature as to endanger the lives of persons being carried on and upon the said railroad, contrary to the form of the statute," &c.; the second charging, that the defendant "did wantonly obstruct the Mississippi Central Railroad"; the third charging, that the defendant "did maliciously and wilfully place an obstruction on said railroad, by means of which said obstruction so placed on the said railroad, a locomotive, being then and there a vehicle of said Mississippi Central Railroad Company, then and there running on said railroad, did diverge from the track thereof, against the form of the statute," &c.

The defendant moved the court to quash the first count, because the clause in the charter of the Mississippi Central Railroad Company, upon which it is based, was not in force. But the court overruled the motion, and this is the first error assigned.

We are of opinion, that the clause of the charter of the railroad referred to, was repealed and superseded by article 164, page 600, of the Revised Code. In declaring the effect and operation to be given to the provisions of the Revised Code, it is provided, that the acts enacted by that Code, with certain exceptions, should "supersede all prior statutory acts and clauses therein revised, and thereby repealed," and that "all acts and parts of acts, the subjects whereof are revised, or consolidated and re-enacted in this Revised Code, or repugnant to the provisions therein contained, shall be and the same are hereby repealed, subject, however, to any express regulations relating thereto, which may be contained in this Code." Rev. Code, 43, arts. 2 and 3. It is manifest from these provisions,

that it was the intention of the legislature to reduce into one, all the statutory enactments in relation to any particular subject-matter, wherever the same was made a matter of special provision in the Code; to establish a uniform rule upon the subject, and to repeal or modify all prior acts containing different provisions, and coming plainly within the scope of the rules declared by the Code.

The subject-matter of providing for the offense of placing obstructions on the Mississippi Central Railroad, endangering life or limb, was embraced in the law of the state, as enacted by the charter of that company. That act was, in that respect, a public law of the state, for the punishment of crime; and when the act of the Revised Code, 600, art. 164, was passed, it was a revision of the law upon the same subject, and the re-enactment of a general and uniform rule in relation to it, which, under the provisions of articles 2 and 3, superseded and repealed prior enactments, containing different provisions, including that contained in the charter of this railroad company.

But, notwithstanding this, we think that the court acted properly in refusing to quash the first count in the indictment; because we are of the opinion, that that court is sufficient, under Art. 164 of the Code. It is thereby enacted: first, "that if any person shall wantonly or maliciously injure or place any implement or obstruction on any railroad in this state," or, secondly, "do any other act, by means of which any car or vehicle shall diverge or be thrown from the track thereof, such person shall be imprisoned in the penitentiary not longer than ten years." The first count in this indictment charges, that the defendant "wilfully and maliciously did place an obstruction on said railroad;" and adds, "which obstruction was of such a nature as to endanger the lives of persons being carried on said railroad." This addition, it is true, appears to have been made with reference to the terms employed in the charter of the railroad company, defining one class of obstructions placed upon the road, the punishment of which was thereby provided for. But the constituents of the offense, as declared by the act in the Revised Code, above referred to, are fully stated in the court, independently of this addition, and no

additional force is given to the charge stated in the count, when tested by the article of the Code, by the superadded words, stating that the nature of the obstruction was such as to endanger the lives of passengers. For not only are the essential words of the statute used in the count, but they appear, from the nature of the thing, to impart what is stated in the superadded words relative to the nature of the obstruction. A wilful and malicious obstruction placed on a railroad, must in its very nature endanger the lives of passengers in the cars on the road; and it was doubtless for this reason, that words in the act of the Revised Code, descriptive of the nature and effect of such obstruction, were omitted as useless and superfluous.

We are, therefore, of opinion, that the words in this count, descriptive of the nature and effect of the obstruction, are surplusage, and might be stricken out without impairing its legal force; and that the count is good under the provisions of the Revised Code.

The next assignment of error is, that the court overruled the motion of the defendant to exclude all the evidence offered in behalf of the state.

The ground of this motion was that the indictment charged that the offense was committed on the first day of June, 1858, and all the evidence showed that it was committed on the 7th September, 1858, and that the evidence was inadmissible to prove that the offense was commited after the time laid in the indictment. But there is no legal force in this position. The indictment was found at October term, 1858, and time was not of the essence of the offense. It is admitted by the counsel for the plaintiff in error that it would have been competent to prove the commission of the offense at any time anterior to the date laid in the indictment. But upon the same principle by which that would be competent, it may be proved that the offense was committed after the date laid, but before the finding of the bill.; for the reason is, that time is not of the essence of the offense, and it is applicable to any time before the finding of the bill, or which would show that the offense was not barred by the statute of limitations, except where time is of the essence of the offense. Miller v. The State, 33 Miss., 356.

The last error assigned is, that the motion for a new trial should have been sustained, on the ground that the verdict was against the evidence. Without a particular statement of the evidence, we deem it sufficient to say that we consider it ample to warrant the verdict of the defendant's guilt.

Let the judgment be affirmed.