WILSON *v.* THE PEOPLE.

1. The Constitution of this State (art. 1, § 23) limits the number of persons to constitute a grand jury to twelve, nine of whom must concur in finding a bill, but the mode of selecting the jurors, until altered by law, remains the same as provided by the Territorial statute.  This court is not permitted to presume, in the silence of the record, that the court adopted an illegal method in convening the grand jury.

2. Where it does not affirmatively appear that the grand jury is an unlawful body, any irregularity in selecting and impaneling it should be raised before plea by a challenge to the array.  Where it is apparent on the face of the record that the grand jury could not have been a legal body, advantage may be taken of the defect by motion in arrest of judgment.

3. An affidavit in support of a motion for continuance on the ground of the absence of a witness, which fails to show that due diligence was used to procure the attendance of the witness at the trial, and which discloses neither the name of the witness, nor his place of residence, nor any ground for belief that his attendance may be secured at a subsequent term, is properly overruled.

4. When the calling of a witness, whose name is not indorsed on the back of the indictment, occasions no surprise to the prisoner, nor makes other preparation necessary to the defense, there can be no good reason to withhold the testimony, if material or important to the prosecution.

5. When a statement by the prisoner's counsel, of what a witness would swear to (it being favorable to the prisoner), is admitted in evidence, the admission of such statement cannot be construed as being in conflict with section 16 of the Bill of Rights, which provides that the prisoner shall have the right to meet the witnesses *against* him face to face.

6. Until the judges of the several district courts established by the constitution were elected and qualified the jurisdiction and powers of the former judges within their respective districts, as constituted by the general assembly of the Territory, continued unchanged.

7. Section 20 of article VI of the Constitution, which declares that until the general assembly shall provide by law for fixing the terms of courts, the judges of the supreme and district courts shall fix the terms, etc., has exclusive reference to the courts created and the judges provided for in that article.

8. If any distinct proposition in a charge to the jury is sound, an exception to the charge *en masse* will not be considered.

9. The district court has authority (Laws of 1876, p. 65), in certain cases specified in the statute, to appoint some one to discharge the duties of the office of district attorney *pro hac vice*. When such an appointment is made, and in the absence of any thing in the record to the contrary, this court must presume that one of the statutory grounds existed when the appointment was made.

*Error to District Court of Jefferson County.*

AT the October term, 1876, of the district court of Jefferson county, the sheriff returned a *venire* for a grand jury of nineteen served. Twelve of these were selected, impaneled and sworn. They returned an indictment into court against the plaintiff in error for an assault with intent to murder. The defendant below was arraigned, pleaded not guilty, and being put upon trial was convicted. Motions for a new trial and in arrest of judgment were severally interposed and overruled; judgment was entered on the verdict and the defendant sentenced.

Messrs. BROWNE & PUTNAM, for plaintiff in error.

A. J. SAMPSON, Attorney-General, for defendant in error.

THATCHER, C. J.   The grand jury system established by the Territorial legislature was materially modified by the constitution.   At the common law a grand jury was composed of not more than twenty-three nor less than twelve good and lawful men, although twenty-four were usually summoned.   If but twelve grand jurors constituted the panel they must have concurred to find an indictment.   If the panel was made up of a larger number, twelve at least out of that larger number must have concurred.

Under the Territorial statute a grand jury was composed of not less than sixteen nor more than twenty-three persons, twelve of whom, the common law number, were required to concur to find an indictment.   By our Constitution (section 23, article 1) a grand jury is declared to consist of twelve men, any nine of whom concurring may find an indictment.   The record affirmatively shows that the sheriff returned into court a writ of *venire facias*, which had issued for the summoning of a grand jury to attend at that term, and that by his indorsement on said writ, he had, in pursuance thereof, summoned nineteen persons.   The writ is not set out in the tran ript, nor need it be, unless there is some special reason for so doing.   *Mackey* v. *The People*, 2 Col. 17.

Sufficient, however, appears, to evince that the grand jury was not summoned with reference to the constitutional requirement, which limits that body to twelve men.   It is obvious that the sheriff, by virtue of a *venire facias* issued for twenty-three persons, pursuant to "an act to provide for the selection of jurors to serve in the district courts" (Session Laws 1874, p. 170) had summoned the nineteen jurors in attendance.   Under this act the jurors must have been selected at the preceding April term of court several months before the change was made in the grand jury system, by the adoption of the Constitution.   This act is still in full force except in so far as it is in conflict with that instrument.   The mode of selecting jurors is not altered, but the panel of the grand jury is limited to twelve persons.   To effectuate the purpose of the legislature in prescribing a

particular mode of selecting jurors, the court may have, of the nineteen in attendance, selected the first twelve that had been drawn from the box, by the clerk of the district court at the April term, if their names in the order in which they were drawn had been preserved. Or the court may for some sufficient reason, by virtue of its common-law power, which is recognized by the statute, have ordered a special *venire*, under which the sheriff may have summoned the identical panel that found the indictment. *Stone* v. *The People*, 2 Scam. 328. It is unnecessary to speculate as to the precise mode adopted by the court to secure a legal grand jury, or to express an opinion as to what was the proper mode under the peculiar circumstances, or even to decide affirmatively that another mode than either of those above suggested was not the only course open to the court.

Every reasonable intendment must be made in favor of the regularity of the record. The record asserts that the grand jury of twelve men were selected and chosen according to law, but as to the particular manner of selecting them, it does not speak. We are not permitted to presume, in the silence of the record, that the court adopted an illegal method in convening the grand jury.

It is said in *Chase* v. *The State*, 46 Miss. 697: "A grand jury was impaneled under the supervision of the court, and the presumption is not an unreasonable one, that a legal grand jury was organized according to law," the record not showing to the contrary.

Where it does not affirmatively appear that the grand jury is an unlawful body, any irregularity in selecting and impaneling it should in general be raised before plea, by challenging the array, and not by a motion in arrest of judgment. Wharton's Crim. Law, § 469, and cases cited; 1 Bishop's Crim. Pro., § 887, and cases there cited.

The case before us comes within the general rule.

Where, however, it is apparent upon the face of the record, that the grand jury finding the indictment could not have been a legal body, *e. g.*, where the statute enacts that a grand jury shall consist of not less than thirteen, nor more than

eighteen persons, and the record shows that the indictment was found by a grand jury composed of nineteen persons, advantage may be taken of the defect by a motion in arrest of judgment. *Miller* v. *The State*, 33 Miss. 356.

The denial of the motion for a continuance on the ground of the absence of a witness was not error. The affidavit did not set up sufficient facts to warrant the court in continuing the cause. From the affidavit it appears that the prisoner neither knew the name of the witness, his place of residence, nor where he could probably be found. So far as the affidavit shows, no inquiries were ever made to ascertain his whereabouts. No efforts were made to secure his attendance at the trial. There is a total want of that degree of diligence which the law enjoins upon him who asks the interposition of the court to delay a cause. For any thing set up in the affidavit there are no reasonable grounds for believing that the evidence of the unnamed witness could ever be made available.

It is assigned for error that the court, without notice to defendant, permitted Dr. Dorman, whose name was not indorsed on the indictment, to testify. His evidence was directed to a description of Morganstine's wounds. It could not well have operated to surprise the defendant. In the case of *Perry et al.* v. *The People*, 14 Ill. 498, the court says: "The notice by copy is intended for the protection of prisoners, by enabling them to prepare their defense against the accusation by the mouths of these witnesses. Courts will see that this protection is afforded them. But when the calling of other witnesses occasions no surprise, nor makes other preparation necessary to the defense, there can be no good reason for withholding material or important testimony for the prosecution." Having reference to the character of his testimony, and to the fact that there is nothing in the record to indicate that the defendant was taken by surprise, we see no error in the court permitting the witness to testify.

It is objected that the court erred in admitting in evidence the written statement made by the prisoner's counsel of

what John Healey would have sworn to, if present. No application for a continuance was made on the ground of the absence of Healey. The counsel's written statement, even if it had been sworn to by the prisoner, did not contain sufficient to authorize a continuance. The statement, through the indulgence of the court, was admitted as evidence in behalf of and not *against* the accused. Our Constitution (§ 16 of Bill of Rights), which in this respect is declaratory of the common law (Bishop's Crim. Pro., § 1090, and cases there cited) provides, "that in criminal prosecutions, the accused shall have the right to meet the witnesses *against* him face to face." This wholesome and beneficent provision, one of the objects of which is to secure to the defendant the right to probe his accusers by a thorough cross-examination, is not in conflict with the action of the court in receiving evidence in the prisoner's favor, and at his instance evidence which could not possibly operate to his prejudice.

Until the judges of the several district courts established by the Constitution were elected and qualified, the jurisdiction and powers of the former judges within their respective districts, as constituted by the general assembly of the Territory, continued unchanged. Section 5, Schedule of Constitution. The Constitution did not contemplate the re-assignment of the late Territorial judges, by reason of the formation of four judicial districts. Until the district judges should be elected under the State organization, one for each of the four districts, the three Territorial judges within the boundaries of their assigned districts, which as to them were in no way disturbed by the Constitution, were clothed with the same powers, and authorized to exercise the same jurisdiction as before the adoption of that instrument. That Jefferson county, after the election and qualification of the district judges under the State organization, formed part of the first judicial district, and that prior thereto, after the admission of the State, in virtue of the provisional arrangement, made by the Constitution, it formed part of the second judicial district, are not thought to be material. The important fact remains that

Amherst W. Stone, at the date of the proclámation by the President of the United States declaring the admission of Colorado into the Union, was the duly constituted judge of the district court in and for Jefferson county, and as such authorized to sit at the trial of Wilson.

Section twenty of Article VI of the Constitution (concerning the judicial department), which declares that " until the general assembly shall provide by law for fixing the terms of the courts aforesaid, the judges of the supreme and district courts respectively shall fix the terms thereof," does not relate to the former judges.. It has to do exclusively with the courts created and the judges provided for in that article. Reference must be made to the schedule to determine what change, if any, was wrought in the functions, powers and jurisdiction of the late Territorial judges, continued in office under the State organization, until they were superseded by the judges elected under the Constitution.

As we have already seen in the respects named, no change was made. Section one of the *schedule* provides: " That all laws in force at the adoption of the Constitution shall, so far as not inconsistent therewith, remain of the same force as if this Constitution had not been adopted." At the date of the adoption of the Constitution, the Territorial law then in force, fixing the terms of court in the several districts, required a term to be held in Jefferson county, beginning the first Monday of October. The term of court at which Wilson was tried, was held at that time. This was in strict accordance with law.

A general exception was taken to the instructions *en masse*.

We have decided at this term, in the case of *Webber* v. *Emerson* (*ante*, page 248), that such an exception, if any distinct part of the charge is sound, will not be considered. This exception comes within the rule there laid down.

The indictment was signed " R. S. Morrison, district attorney, specially appointed."

By an act of the general assembly, approved January

22, 1876, "in regard to district attorneys," it is provided that if the district attorney be interested, or shall have been employed as counsel in any case, which it shall be his duty to prosecute or defend, 'or if he be sick or absent, the court shall appoint some person to discharge the duties of the office *pro hac vice.* Here is ample power to appoint specially a prosecuting officer, which the court called into exercise. The presumption is that one of the statutory grounds existed when the appointment was made. The record shows that Mr. Morrison, acting under the eye of the court, was recognized as its legally appointed prosecuting officer, and this court will intend, there being nothing in the record to contradict it, that he legally exercised the functions of that office. *Isham* v. *The State,* 1 Sneed, 111 ; *Eppes* v. *The State,* 10 Tex. 474.

Let the judgment of the district court be affirmed, with costs.

*Affirmed.*