BOARD OF COUNTY COMMISSIONERS OF PITKIN COUNTY, APPELLANT, v. BROWN, APPELLEE.

1. TRADE FIXTURES—RIGHT OF REMOVAL.

Trade fixtures do not become the property of the landlord, if they are removed during the term, or afterwards with his consent. It is not essential to the application of this rule, that the business in which the fixtures were used is distinctively commercial.

2. ACTION AGAINST COUNTY—CUMULATIVE REMEDY.

One whose claim against a county has been presented to and disallowed by the board of county commissioners, has the right to elect to appeal from the decision of the board, or bring an independent action.

3. PRACTICE—JURY FEE.

The failure of the court below to compel the plaintiff to advance the jury fees is not such an error as to warrant a reversal of the judgment.

4. PRACTICE.

A recovery can be had in an action for use and occupation where the defendant holds over after the expiration of his term.

*Appeal from the District Court of Pitkin County.*

Mr. C. S. WILSON, for appellant.

Mr. J. M. DOWNING and Mr. H. L. McNAIR, for appellee.

BISSELL, J., delivered the opinion of the court.

On the 1st of February, 1890, Brown and Hoag leased certain rooms in a building in Aspen to the authorities of Pitkin county. The lease was for a year at a reserved rental of $200 per month, and contained an express agreement that at the expiration of the term the lessees could remove furnishings and fixtures from the premises. Under this lease the county authorities went into possession, and built a brick vault for the use of the officers of the county, and laid the foundation on the ground. Shortly before the term expired the county began to remove what it had put into the building, and through some individual members of the board of

county commissioners had a conference with the lessors as to the time within which this work should be done. The vault was treated as a fixture, and the authorities commenced tearing it down and taking away the material which composed it. During this proceeding the keys of the place were tendered by some member of the board to the lessors, who refused to receive them while the county still occupied the premises. Negotiations were then initiated between the parties. It is fairly deducible from the record that the result was substantially the consent of the lessors to the removal of the structure. The county continued to occupy the rooms and to remove the stuff which they had placed in the building. This lasted for about two months. At the end of that time they surrendered possession. The lessors accepted the surrender, but then asserted a claim against the county for the value of the use of the premises during that period, and damages for the removal of the vault. This action was brought to recover what they claimed, and resulted in a verdict of the jury against the county for the sum of $400, which would have been the amount of the rental value if the action had been brought directly on the lease. There was a great deal of contention on the trial, and there has been much urged in the argument, regarding the right of the tenant to remove the vault as a fixture under the express reservation contained in the lease. The general maxim, of course, is *quicquid plantatur solo, solo cedit*, but the rule is subject to many exceptions and modifications. It has never been true that trade fixtures became the property of the landlord if they were removed either during the term or afterwards by his consent, even though there was no express covenant in the lease. There are likewise many mixed cases where the fixtures are not exactly trade fixtures, in the sense in which those words are ordinarily used, but they are fixtures essential to the business carried on by the lessee. Ewell, Fixt., p. 81, *et seq*. If it were necessary, we should be inclined to hold, under the proofs in this case, that these fixtures come within the principle applicable to the removal

of trade fixtures, and the county had the right to take them away before the expiration of the term. The lease was granted for a special purpose and a particular occupation. A vault was absolutely indispensable to the safe transaction of the business of the county. It is not essential to the application of the rule that the business should be distinctively a commercial one. The law will endeavor to protect the tenant in the removal of what he has been compelled to add to the property for the safe, convenient, and economical transaction of the business carried on in the premises with the consent of the landlord, due regard being given to the rights of the owners of the realty. We think, however, that the proof shows very satisfactorily that the removal was virtually without objection from the lessors, and that the county was permitted to remain in possession during the time they were occupied in tearing it down and taking it away. Both parties treated it as a fixture, and apparently recognized the right of removal, so that, in any event, the question of the character of the structure remains a question which need not be authoritatively determined.

This action was commenced directly in the county court to recover what the plaintiffs claim to be due. The proof showed that they had presented the claim to the board of county commissioners for allowance and that it had been disallowed. It is now seriously contended by counsel that the plaintiffs were without right to institute the suit, and that their only legal remedy for the enforcement of the claim was by appeal from the action of the board to the district court under section 547 of the statutes. It is needless to enter into an elaborate discussion of this question, for this particular proposition was settled after full discussion in a case decided at the present term of this court in *Board of County Com'rs Park Co. v. Locke, post,* 508. In that case we held that the remedy was a concurrent one, and that the party might either appeal, or bring an independent action, according to his election.

The case was tried to a jury. Before it was impaneled,

the appellant, the board of county commissioners, interposed a challenge to the array, and raised the further objection that the plaintiffs were not entitled to a jury, since they had failed to pay the fees in advance. The act of 1891 (Sess. Laws 1891, p. 248) undoubtedly provides the mode to be pursued by the authorities of the county in the procurement of juries. It is impossible to determine from the abstract whether the board had failed to take the steps which the statute directs, or whether some other reason determined the action of the court in the premises. It is plain that this must prevent any clear determination that the action of the court was irregular. Had this showing been made, it would have been equally futile for the purposes of a reversal. The act of 1891, in section 5, distinctly provides that the courts shall have power to procure juries by an open *venire*, according to the ancient practice, whenever it may happen that one is not in attendance for the trial of causes under the procedure prescribed by the act. It was not error to overrule the challenge. The failure of the court to compel the plaintiff to prepay the fees is not such an error as warrants us in disturbing the judgment. The act of 1891, in section 9, undoubtedly provides that in certain counties therein specified the plaintiff's right to demand a jury in the county court is dependent upon the prepayment of the fees at the time of the demand. It was doubtless the duty of the court to compel the plaintiffs to advance these fees before they called the jury into the box. Statutes like this have frequently been held constitutional, and it is fully within the power of the legislature to put that restriction upon the right to a trial by a jury in such courts. Failure to compel the prepayment, however, cannot be permitted to disturb the validity of the judgment which the plaintiffs have recovered, for it is an error which has worked no harm, since an adverse judgment would necessarily include the fees advanced. The amount of the recovery therefore, was neither increased nor diminished by the failure, and the appellants may not complain.

The only remaining question of any moment in the case

is that presented by what at the common law would be termed the "form of the action." Counsel for the appellant, with very considerable research and learning, argue that the plaintiffs could not recover in an action for use and occupation. It may well be conceded that possibly this was true at the common law, and that it would have been very important for the plaintiffs to determine whether they would bring *indebitatus assumpsit*, or whether their action should be in debt or by way of trespass for mesne profits. The books are full of learned and intricate discussions on this question, but under the procedure in this state is of little more value to the practitioner than a full and accurate knowledge of the mode of trial by wager of battle. It is only important now for the pleader to state in his complaint the facts out of which his cause of action arises. If he state what would enable him to recover in any one of the three forms of action at the common law, and his proof supports his allegation, he must have judgment for the sum to which he proves himself entitled. In this case the record clearly shows that for two months the county remained in possession of the property after the expiration of their term. The value of this use was proven to be $200 per month. The recovery was for $400. The plaintiffs attempted to claim more by way of damage to the premises, but evidently the evidence was not deemed sufficient to warrant a verdict. Since the record discloses the fact that the county did remain in possession for a period sufficiently long to justify the recovery, and there is no question in this case as to their responsibility as for an unexpired term, there is nothing in the contention concerning the form of the action to justify us in disturbing the judgment. It cannot be insisted that the consent of the lessor to the removal after the expiration of the term would excuse the county from its responsibility as for the use and occupation. The time they took would not be reasonable, under any circumstances, for such a purpose, and if they desired to remove a fixture of that magnitude under the lease they should have completed it before the expiration of the term, or secured

such an express consent to occupy after its termination as to completely negative their legal responsibility for use and occupation. The evidence in this case does not bring the county within the scope of any adjudication on this matter. The case was fairly tried, the judgment is warranted by the record, there are no errors in it which compel us to reverse the case, and the judgment will accordingly be affirmed.

*Affirmed.*