[No. 5892.]

IMBODEN AND HILL v. THE PEOPLE.

1. Appellate Practice—Abstract of Record—Failure to Observe Rule—Matters Not Reviewed.

On writ of error, where plaintiff in error fails to include important evidence in the abstract, so·that it becomes necessary to examine the bill of exceptions to determine what the testimony was, an assignment of error that the verdict is not supported by the evidence will not be considered.—P. 150.

2. Grand Juries—Manner of Selection—Open Venire—Statutory Construction.

Session Laws 1891, pp. 248-253 inclusive, provide that the clerk of the district court, in the presence and with the assistance of the sheriff, shall, at least thirty days previous to the term of court, draw a sufficient number of grand and petit jurors for the next succeeding term, but that the grand jurors shall not be drawn or summoned unless ordered by the court; that in drawing for the first panel, the first twelve names drawn shall constitute the grand jury in case one is needed; and in case the county commissioners fail to return a list to the clerk, or if jurors shall not be drawn or summoned as provided, the court may, nevertheless, cause a jury to be summoned by open venire. Held, that where no grand jury has been sum-

moned for a term of court, and during the term the court orders
the impaneling of one, the court is authorized to direct that such
jurors be summoned by open venire as at common law.—P. 151.

**3.  Practice in Criminal Cases—Indictment—Form and Requi-
sites.**

In an indictment for conspiracy, unless the crime which it
is alleged defendants conspired to commit is named, the indict-
ment must allege facts constituting every element necessary to
establish that offense as fully as if the indictment was for its
perpetration.—P. 160.

**4.  Same—Sufficiency of Counts—Prejudice.**

Where defendants were convicted on four counts and sen-
tenced for the same term on each, the sentences to be concur-
rent, defendants are not prejudiced by the insufficiency of one
or more, of the counts, if one of the counts on which they were
convicted was good, since they would still have to serve the
same number of years.—P. 161.

**5.  Same—Description of Money.**

Section 1453, Mills' Ann. Stats., provides that, in every in-
dictment in which it is necessary to make any averment as to
any money or note issued by any law of the United States, it
shall be sufficient to describe the same simply as money, with-
out specifying any particular coin or note.  Held, that an indict-
ment for conspiracy to defraud a bank by unlawfully, etc., con-
verting to defendants' own use a specified sum in money, the
property of the bank, of the value of the same sum, contains a
sufficient description of the property.—P. 162.

**6.  Same.**

An indictment charging that defendants conspired with
others to procure their election as president and vice-president
of a bank for the purpose of unlawfully, etc., converting to their
own use a specified sum, property of the bank, which would
come into their hands as the bank's officers, and as officers of
the bank wrongfully appropriated to their own use money of
the value of such sum belonging to the bank, states the offense
in the language of the statute, which is sufficient in accordance
with Mills' Ann. Stats., § 1432, providing that every indictment
shall be deemed sufficiently technical and correct which states
the offense in the terms and language of this code, or so plainly
that the nature of the offense may be easily understood by the
jury.—P. 163.

**7.  Same—Substantive Offense.**

A count in an indictment against bank officers, after alleg-
ing a conspiracy, charged that they co-operated with each other

in the commission of a felony by feloniously, etc., by means of certain false and fraudulent pretenses, obtaining from the bank divers sums of money, choses in action, goods, wares, effects and other valuable things, of greater value than $20.00, with intent knowingly and feloniously to cheat and defraud the bank. Held, that such count charged a conspiracy to commit the offense of obtaining property by false pretenses, and was, therefore, not objectionable for failure to describe the property.— P. 163.

8.   Same—Means.

An indictment for conspiracy need not aver the means by which the conspiracy was to be carried out.—P. 164.

9.   Appellate Practice—Practice in Criminal Cases—Bill of Particulars—Discretion—Review.

The matter of granting or refusing a bill of particulars in a criminal case is addressed to the sound discretion of the trial court, and will not be reviewed unless such discretion has been abused.—P. 166.

10.   Practice in Criminal Cases—Indictment—Bill of Particulars —Denial—Discretion.

Where defendants were convicted on several counts of an indictment for conspiracy, but the sentence on each was directed to run concurrently, and one of the counts set out in detail the facts and circumstances by which the object of the conspiracy was intended to be carried out, the court's denial of an application to compel the state to furnish defendants with a bill of particulars was a proper exercise of discretion.—P. 166.

11.   Appellate Practice—Practice in Criminal Cases—List of Jurors Not Furnished Defendants—Prejudice.

Section 1460, Mills' Ann. Stats., provides that every person charged with murder or other felonious crime shall be furnished previous to his arraignment with a copy of the indictment and a list of the jurors and witnesses. Held, that a failure to serve defendants with a list of jurors, as therein required, is not ground for reversal, unless prejudice is shown.—P. 167.

12.   Same—Trial—Postponement.

Defendants were arraigned November 18, after which the regular jury panel was depleted, until only twelve remained. On November 29 defendants were served with a list of the twelve, and, on December 4, with a list of a special venire composed of well-known residents who were known to defendants' counsel. Defendants applied for a continuance on the ground that they had not had time to secure information concerning the twelve jurors, which was overruled, whereupon defendants re-

quested an adjournment until the second succeeding day, which was denied; the court offering to adjourn until the succeeding day at 10 o'clock, which defendants declined to accept. Held, that, in the absence of a showing that defendants were materially prejudiced, the denial of the postponement is not reversible error.—P. 168.

13. **Same—Jurors Challenge to Favor—Findings of Court—Conclusion on Review.**

Where a juror is challenged for favor in a criminal case, and the court determines as a matter of fact that the juror stands indifferent between the parties, the court's finding is conclusive on writ of error.—P. 172.

14. **Same—Challenge for Cause—Findings—Review—Discretion.**

Under Mills' Ann. Stats., § 2592, making the trial court the trier of the qualifications of jurors when challenged for opinions, the court's finding that the jurors in a criminal case stand indifferent and are competent is not subject to review on writ of error, except in case of gross abuse of discretion.—P. 172.

15. **Practice in Criminal Cases—Jury—Qualifications.**

Where, in a prosecution of bank officers for a conspiracy to defraud the bank, certain jurors, though creditors of the bank or financially interested therein at the time of its failure, testified that they had no bias or prejudice against the defendants, and any interest they might have in the bank's affairs could not be affected in any way by the litigation, they were not disqualified.—P. 173.

16. **Private Papers—Practice in Criminal Cases—Searches and Seizures—Evidence—Wrongfully Obtained—Constitutional Law.**

In a prosecution of certain bank officers for conspiracy to defraud the bank, private letters and telegrams between certain of the conspirators, which their servants surrendered to the deputy district attorney after obtaining them from defendants' private files, were not objectionable as evidence as subjecting defendants to an unreasonable search and seizure, prohibited by § 7, art. 2, Colo. const.; since such provision is but a restriction on the power of the state to make searches and seizures for its own benefit, and does not prohibit searches and seizures by private persons.—P. 177.

17. **Practice in Criminal Cases—Method of Obtaining Evidence —Collateral Issue—Court Not Determine.**

When papers are offered in evidence in a criminal case, the court can take no notice of how they were obtained; nor will it

form a collateral issue to determine whether they were obtained illegally.—P. 180.

18. **Practice in Criminal Cases—Conspiracy—Instructions—Embezzlement.**

In a prosecution of bank officers for a conspiracy to embezzle the bank's funds, the court specifically charged that the indictment was for conspiracy to commit a crime against the laws of the state;. that the third and fourth counts charged a conspiracy to commit the crime of embezzlement; and that the fifth and sixth counts charged a conspiracy to commit the crime of obtaining money by false pretenses. Held, that an instruction, in which the court read the statutes defining conspiracy, embezzlement, and obtaining money under false pretenses cannot be construed as misleading the jury into believing that defendants were on trial for such last-mentioned crimes and not for conspiracy.—P. 181.

19. **Same.**

Where the jury was specifically charged that defendants were being tried for conspiracy "to commit" embezzlement and the crime of "obtaining" money by false pretenses, they were not misled by an instruction in which was read the whole of the conspiracy statute, that, if two or more persons conspire to do, or "to aid" in the doing of, a wrongful act, each shall be guilty, etc.—P. 181.

20. **Same—Limitations—Recital of Charge.**

An instruction that the material allegations of the indictment were that, on the 10th of September, 1904, "or within three years prior to the finding of the indictment," the defendants did, etc., is not objectionable because the words quoted are not in the indictment.—P. 182.

21. **Practice in Criminal Cases — Conspiracy — Indictment — Time.**

The time when the offense was committed need not be accurately stated in an indictment for conspiracy; time not being of the essence of the offense.—P. 182.

22. **Practice in Criminal Cases—Instructions—Date of Offense.**

In a prosecution for conspiracy, an instruction that, if the jury believe from the evidence beyond a reasonable doubt that on September 10, 1904, or within three years prior to the finding of the indictment, defendants did, etc., they should be convicted, is not objectionable because it does not limit the time of the commission of the offense to the date specified in the indictment.—P. 182.

**23.  Same—Assumed Facts.**

An instruction in the trial of two defendants for conspiracy, that the jury may convict either or both of the defendants, provided that those, the one or both to be convicted, conspired together or with some other person or persons jointly indicted, or that the jury might find either or both not guilty, is not objectionable as assuming that one or both of the defendants are to be convicted.—P. 183.

**24.  Same.**

Where, in a prosecution for conspiracy, the evidence is undisputed that the parties met on a certain date, it was not reversible error for the court, in an instruction on conspiracy, to assume that the parties came together.—P. 183.

**25.  Same.**

In a prosecution for conspiracy, the first instruction, correctly defined that offense, and also charged that, if defendants did unlawfully and feloniously agree, conspire and co-operate to do the act alleged, etc., and the jury were also repeatedly told that the design and purpose formed by the, conspirators must have been the commission of the offense mentioned in the indictment.  Held, that defendants were not prejudiced by an instruction that a "common design" and unlawful purpose by two or more persons is the essence of the charge of conspiracy, and which did not define with certainty what was meant by "common design."—P. 184.

**26.  Constitutional Law—Class Legislation.**

Sess. Laws 1893, c. 68, § 1, provides that whoever embezzles or fraudulently converts to his own use money, goods or property delivered to him, which may be subject to larceny, shall be deemed guilty of larceny, and punished accordingly; that if any officer, agent, clerk or servant of any incorporated company or person embezzles any money thereof which shall have come into his possession by virtue of his office, he shall be guilty of larceny, and if any banker converts to his own use any money or other property belonging to or in possession of the bank, or belonging to any person and deposited therein or therewith, he shall, whether intrusted with the custody thereof or not, be deemed guilty of larceny.  Held, that though such section authorizes the conviction of a bank officer without proof that the funds embezzled came into his possession by virtue of his employment and thus requires less evidence than the other two classes mentioned, is not thereby rendered unconstitutional as class legislation, in violation of the fourteenth amendment of the federal constitution, since it applies to all bankers.—P. 187.

27. **Appellate Practice—Practice in Criminal Cases—Conviction on Several Counts—Concurrent Sentences.**

Where defendants were convicted of conspiracy on four counts, and sentenced to the same term on each, to run concurrently, they cannot complain on review even though the facts proved show but a single transaction, since they are suffering but one sentence.—P. 189.

*Error to the District Court of the City and County of Denver.*

*Hon. P. L. Palmer, Judge.*

Leonard Imboden and James A. Hill were convicted of conspiracy to embezzle funds and property of the Denver Savings Bank, and they bring error.

Decision *en banc.*                          *Affirmed.*

Mr. H. J. HERSEY and Mr. L. S. SMITH, for plaintiffs in error.

Mr. W. H. DICKSON, attorney general, Mr. GEO. STIDGER, district attorney, Mr. JOHN H. CHILES, assistant district attorney, and Mr. HARRY S. SILVERSTEIN, deputy district attorney, for defendants in error.

Mr. JUSTICE BAILEY delivered the opinion of the court:

An indictment was returned against plaintiffs in error, together with seven others, by a grand jury sitting in and for the city and county of Denver; the indictment containing six counts, upon the first two of which the defendants were found not guilty. Upon the last four they were found guilty. The third and fourth counts charge the defendants with conspiracy to embezzle the property of the Denver Savings Bank. The fifth and sixth counts charge them with a conspiracy to obtain money and prop-

erty of the Denver Savings Bank by means of false pretenses.

Plaintiffs in error assign several reasons as to why this conviction and judgment should be declared to be erroneous and set aside. These we will determine in the order in which they are presented in the briefs.

It is first contended that the verdict is not supported by the evidence. Because of the flagrant violations of rule 14, we are unable to determine this question. Rule 14 provides: "Plaintiffs in error in all cases shall  *  *  *  file with the clerk  *  *  *  a printed abstract of the record in which they shall set forth  *  *  *  fully the points relied upon for the reversal of the judgment or decree."

We give the following excerpts from the printed abstracts for the purpose of showing how utterly impossible it is to determine what the testimony was:

"Q. Was there any discussion as to whether or not Mr. Imboden should go with you or stay with you? · (Defendants object to the question as leading. The court allowed the witness to answer the question. The defendants except.)"

The answer to the question was omitted. The next question appearing in the abstract is:

"What did he reply to this?"

This was also objected to as leading, the objection was overruled, and defendants excepted; but the answer is again omitted. The next question is:

"What occurred then, Mr. Wilfley, with reference to the election of officers?"

This question was objected to, objection overruled, and the answer omitted. Exhibits U-27 to U-33 were then offered in evidence. They were objected to, the objection was overruled, and the exhibits admitted, but they do not appear in the abstract. Exhibits W-1 to W-19 were offered.

They were objected to, the objection overruled and they were introduced in the testimony, but are omitted from the abstract. Exhibits Y-1 to Y-16 and Y-17 to Y-49 were offered, objected to, objection overruled, and the exhibits admitted in evidence, but are absent from the abstract.

It is apparent from the abstract that there must have been more than 200 exhibits, consisting of letters, checks, drafts, telegrams, corporation records, and other similar matters that were exhibited and read to the jury; but the abstract of the record is absolutely silent as to what they contain. A witness was asked the following question:

"Do you know of anybody receiving the money from the proceeds of these notes?"

Objection was made and overruled, but the answer is omitted. It appears to have been the rule adopted by the compiler of the abstract to omit therefrom the answers to the questions propounded to witnesses, and which were objected to by the attorneys for defendants. In one of the briefs filed on behalf of plaintiffs in error it is asserted:

"The testimony of Wilfley is that he agreed to extend credit and furnish money only in legitimate business transactions (folio 2596), and that he did not become a party to any agreement to misappropriate or squander the funds of the bank, and that no such suggestion was made to him (folios 3431-3434)."

Neither of the folios mentioned are contained in the abstract. So that, without referring to and examining the bill of exceptions, it is impossible for us to determine what testimony was presented to the jury, and it is consequently impossible for us to determine whether or not it was sufficient to warrant the verdict rendered. Under the repeated rulings of this court, the errors assigned, which are not suf-

ficiently presented by the record as abstracted, will not be passed upon.—*Venner v. Denver Union Water Co.,* 32 Colo. 205; *Zipperian v. People,* 33 Colo. 134; *Means v. Gotthelf,* 31 Colo. 168.

The next contention of plaintiffs in error is that the grand jury which returned the indictment against them was improperly selected by the sheriff upon an open venire, instead of having been drawn from the box, as provided by the statute.

The Session Laws of 1891 make provision for the selection by the board of county commissioners of competent persons to serve as jurors. The clerk of the district court shall write the names of those so chosen by the board of county commissioners on ballots and place them in a box, and, at least thirty days prior to the term of court, with the assistance of the sheriff, and in the presence of the sheriff, the clerk shall draw by chance from the box in which the names have been placed a sufficient number of grand and petit jurors for the next term of court. Grand jurors shall not be drawn, summoned, or required to attend the sitting of any court in the state unless specially ordered by the court having jurisdiction to make such order. In drawing the list of jurors for the first panel of court, the first twelve names drawn from the box shall constitute the list of jurors for the grand jury, in case a grand jury is required. If the board of county commissioners fails to return a list of competent persons, or if jurors shall not be drawn and summoned as in the act provided, and a jury be required in either the district or county court, the court may nevertheless have power to cause a jury to be summoned by open venire as heretofore practiced.—Sess. Laws 1891, pp. 248-253, inclusive.

The clerk and the sheriff, pursuant to this statute, upon the 16th day of August, 1905, drew from the box 150 names of persons to serve as petit jurors

at the September term of court. Upon the 19th of September the district court made an order, wherein it was recited that: ''No grand jury has been heretofore especially ordered by the court, and that no grand jury has been summoned for service at this term of court, and, it appearing to the court that one should be called, therefore it is ordered by the court that an open venire as heretofore practiced issue herein to the sheriff of the city and county of Denver for twelve men to serve as such grand jurors.''

The contention of plaintiffs in error is that, inasmuch as the statute provides for the manner of selecting a grand jury, the manner therein prescribed is exclusive, and that a grand jury may not be obtained in any other way. There are many authorities which warrant the plaintiffs in error in making this contention, among which are:—*Gladden v. State,* 13 Fla. 623; *State v. Brooks,* 9 Ala. 9; *Keitler v. State,* 4 Iowa 291; *Brown v. State,* 9 Neb. 157; *Stokes v. State,* 24 Miss. 621.

Upon the other hand, however, there is very respectable authority for the rule that the statute is simply directory, and is not exclusive of the common-law method of securing juries. At common law grand jurors were selected as well as summoned and returned by the sheriff. In 20 Cyc., at page 1305, it is announced that, instead of permitting a grand jury to be thus selected and constituted as well as summoned at the discretion of the sheriff from the citizens of the county generally, provision is made by statute in many jurisdictions for the procuring of names and the preparation of jury lists from a specified source, as, for instance, from poll books or tax rolls, and for drawing from the box or wheel or otherwise selecting the persons obtained to be summoned and to be served as grand jurors by the judge or other officer or board of officers designated by law

for this purpose. The statutes regulating the manner of making jury lists are frequently held to be directory merely, and not mandatory. The author cites cases in support of the text from Alabama, Mississippi, Missouri, North Carolina, Ohio, Pennsylvania, Rhode Island, and Washington. The article in Cyc. then states that it may be laid down as a general rule that courts do not look with indulgence upon objections to irregularities in selecting or drawing grand juries, committed without fraud or design, and which have not resulted in placing upon the panel disqualified jurors.

In *Giano v. People,* 30 Colo. 20, we said: "It has been pretty generally held that statutes for the summoning or drawing of jurors, unless otherwise therein expressly provided, are directory in their nature, and do not furnish an exclusive method. Our statute does not make exclusive the method therein prescribed under which defendant contends his jury should have been summoned."

In *Board of County Commissioners v. Brown,* 2 Colo. App. 473, a case in which there was an open venire issued, the county commissioners interposed a challenge to the array, for the reason that the jury was not obtained in the manner required by the statute. The court of appeals held: "Courts shall have power to procure juries by an open venire, according to the ancient practice, whenever it may happen that one is not in attendance for the trial of causes under the procedure prescribed by the act." See, also, *Babcock v. People,* 13 Colo. 515; *Beery v. U. S.,* 2 Colo. 186; *Mackey v. People,* 2 Colo. 13; *Wilson v. People,* 3 Colo. 325.

While the law providing the manner of obtaining jurors has been changed from time to time in this state, the provision giving the court the power

to order a special venire has remained practically the same.

Plaintiffs in error make the point that the law previous to 1891, after providing that the court might have power to cause a jury to be summoned by open venire as heretofore practiced, stated: "This provision shall extend to both grand and petit juries"—and that that provision is omitted from the present statute. The entire statute relates to grand as well as petit juries, and the section contains nothing by which it may be determined that this provision does not relate to grand jurors as well as petit jurors. The section provides that, if the jurors shall not be drawn and summoned as herein provided, then an open venire may issue. The act provides that the first twelve names drawn shall constitute the grand jury. The first twelve names were drawn as a petit jury more than a month before the grand jury was ordered, so that grand jurors could not have been drawn as provided in the act, and must be obtained by an open venire or not at all.

Section 13 of the act of 1874, relating to juries, contained the following: "Nor shall the authority of the court to cause jurors to be summoned when none have been selected or summoned previous to a term of court, in the manner prescribed by law, be deemed or held to be impaired by anything herein contained."—Laws 1874, p. 174. There is nothing in that section which provides that it shall apply to grand jurors as well as petit jurors. There is no distinction made between the two. In principle the language is practically the same as that of section 5 of the present law, which contains this provision: "If jurors shall not be drawn and summoned as herein provided and a jury is required, the court shall nevertheless have power to cause a jury to be

summoned by an open venire as heretofore practiced.''

In *Wilson v. People,* 3 Colo. 325, in speaking of the act of 1874 and the grand jury in the case which found an indictment against Wilson, it is said:

''The court may, for some sufficient reason, by virtue of its common-law power, which is recognized by the statute, have ordered a special venire,·under which the sheriff may have summoned the identical panel that found the indictment.''

The common-law power of the court to issue an open venire in the act of 1874, as thus recognized, is the same to all intents and purposes as that in the act of 1891. The statute provides that: ''No grand jury shall be summoned unless specially· ordered by the court.'' .It provides also that, when a grand jury is required, the first twelve names drawn from the box shall constitute the grand jury. The names must be drawn from the box thirty days before the term of court begins and thirty days before the order for a grand jury could be made, unless the court during one term should order a grand jury for the next. If the statute is to be strictly construed and strictly followed, and is exclusive of the ancient method of securing grand jurors, as seems to be contended by plaintiffs in error, it would be impossible ·to obtain a legal grand jury except when the necessity for one was apparent at least thirty days before the commencement of the term, and the court should still be in session in the preceding term.

One of the very things complained of in *People· ex rel. Bonfils v. District Court,* 29 Colo. 83, was that the court attempted to impanel a grand jury from persons whose names remained in the jury box after the petit jury had been drawn therefrom. If the doctrine contended for by plaintiffs in error is to obtain, the statute which authorized the court to

call a grand jury will be inoperative except in very rare instances.

Inasmuch as the courts of this state, when the matter has been presented to them, have, so far as necessary, determined that the statutory method of obtaining juries, either grand or petit, was not exclusive of the common-law procedure—and to hold otherwise would practically prohibit the obtaining of a grand jury—the trial court committed no error in having overruled the motion of plaintiffs in error to quash the indictment, or in overruling the other motions interposed by plaintiffs in error intended to reach the same end. ·

Defendants moved to quash the third, fourth, fifth, and sixth counts of the indictment upon which they were found guilty. The motion was overruled, and the action of the court is assigned as error. The reason argued in the brief as to why the motion should have been sustained is that these counts, and each of them, failed to state facts sufficient to constitute a crime.

The third count, after alleging the conspiracy of defendants and seven others in apt terms, alleges that the purpose of the conspiracy was to cause one or more of them to be elected president and vice-president of the Denver Savings Bank, and, being such officers and agents of said bank, certain moneys, bullion, notes, bills, bonds, stocks, securities, and personal property belonging to and in the possession of the bank of the value of $1,712,587.13, unlawfully, feloniously, and fraudulently convert to their own use.

The fourth count is the same, except, that it alleges that the conspiracy was for the purpose of unlawfully, feloniously, and fraudulently converting to their own use $1,712,587.13 in money, the property of the bank.

The fifth count, after alleging the conspiracy, alleges that they co-operated with each other in the commission by them or some one or more of them of an unlawful act, to wit, a felony, which said felony was that of feloniously, fraudulently, knowingly, and designedly, by means of certain false and fraudulent pretenses there and thereafter to be used, made, and availed of by the alleged conspirators (naming them), or some one or more of them, obtaining from the Denver Savings Bank divers sums of money, choses in action, and divers goods, wares, chattels, and effects or other things in amounts and quantities of a greater value than $20, with intent knowingly, designedly, fraudulently, and feloniously to cheat and defraud the said Denver Savings Bank.

The sixth count also charges a conspiracy to obtain the property of the Denver Savings Bank by false pretenses, but in that count the means by which the object and purpose of the conspiracy was to be brought about is fully set forth. It is too voluminous to be inserted in this opinion. The substance of it is, however, that there should be organized, acquired, and controlled by the alleged conspirators certain banking institutions, mercantile, industrial, railway, and other corporations in various states and territories, namely, Texas, Missouri, Oklahoma, Indian Territory, Colorado, Massachusetts, and Kansas.

The indictment then sets forth the names of the various corporations, and that the stock of these corporations should be issued to some one or more of the conspirators or their agents upon false, fictitious, and worthless securities as paid-up stock, while, as a matter of fact, the stock and the certificates therefor were to be of no value whatsoever, and were not fully paid; that bonds, bills, drafts,

checks, certificates of deposit, promissory notes, and other evidences of indebtedness should be executed by the alleged conspirators or by some one or more of them, and by the banking and other corporations therein named, that when so executed would be unlawfully acquired by the alleged conspirators and by the banking and other corporations or some one or more of them; that it should be falsely, knowingly, designedly, and feloniously pretended by the alleged conspirators or by some one or more of them and by said banks, mercantile, and other corporations, or some one or more of them, that the same had been acquired in the ordinary course of business by loaning to the persons so executing, indorsing, and negotiating the evidences of indebtedness, while, as a matter of fact, they had not been and were not. to be acquired in the ordinary course of business, and no moneys had been or were to be loaned upon the same; that the alleged conspirators, or some of them, or the banks or corporations, or some of them, were to sell the securities and the shares and certificates of stock to the Denver Savings Bank, and obtain from it money, choses in action, and other property thereupon, by falsely and fraudulently pretending and representing to the Denver Savings Bank that the securities and shares of stock were valuable and worth the various amounts named in the securities; and that the stock certificates and shares were full paid and of great value, and that the amounts named in the securities and for which the same were drawn had been truly and in good faith and in due course of business loaned to the persons by whom said securities were signed, all of which matters and things and representations were then and there known by the alleged conspirators and by the several banking institutions and corporations to be false, fraudulent, and untrue; that the alleged

conspirators were to have one or more of their number elected as officers and directors of the Denver Savings Bank; and that they, having acquired control and charge of the assets of the said bank, as part of the conspiracy, should pass favorably upon these securities and shares of stock as good and sufficient and valuable and available security for the moneys and other things belonging to and in the possession of the Denver Savings Bank, and that they would procure the Denver Savings Bank to make loans of and part with money, choses in action, and other valuable things upon the strength and faith of said worthless and fictitious securities, when in truth and in fact the persons to be elected as officers and directors of the Denver Savings Bank then and there well knew that the securities were false, fictitious, and worthless—and all of which the alleged conspirators knew.

It was also alleged in the indictment that some of these persons would feloniously represent to the Denver Savings Bank that a certain banking institution, namely, the Cherokee State Bank of Enid, had been organized and was existing and doing business, and that $50,000 should be loaned to the Cherokee State Bank of Enid and other banks upon the shares of stock and certificates of stock of the Cherokee State Bank of Enid, while, as a matter of fact, the Cherokee State Bank of Enid had not been, nor was it to be, organized, nor was it in existence, or to be in existence, at the time the false representations were to be made to the Denver Savings Bank; and that, by means of said false representations to be made to the Denver Savings Bank, the persons named in the indictment, or some of them, would procure from the Denver Savings Bank the sum of $50,000; and that it was further to be falsely represented to the Denver Savings Bank that some one

or more of the persons named in the indictment or some of the banks had a large account of deposit in some one or more of the banks or banking institutions mentioned in the indictment as being controlled by the alleged conspirators, and had actually the cash and moneys on deposit therein in the name and to the credit and subject to the check of such persons; and that such persons should and would draw a check or draft upon said pretended account, which check was to be falsely and fraudulently represented to be paid in the ordinary course of business; and that thereupon the person or persons would cash the check and obtain the money thereon from the Denver Savings Bank upon such false and fraudulent representations, whereas, in truth and fact, the representations of each and all were false and fraudulent, and the person or persons so drawing such check had and were to have no money on deposit in any of said banks or elsewhere wherewith to pay for such check or draft to be cashed with the moneys of the Denver Savings Bank.

The specific objection urged against the third and fourth counts is that the property which it is alleged the conspirators intended to embezzle was not sufficiently described. Unless the crime which it is alleged the defendants conspired to commit is named, the indictment must contain every element necessary to constitute that offense as fully as if the indictment was for its perpetration.—*Lipschitz v. People,* 25 Colo. 261.

The third count of the indictment alleges that the property to be embezzled was "certain moneys, bullion, notes, bills, bonds, stocks, securities, and personal property belonging to and in the possession of said bank, of the value of $1,712,587.13." It is contended by the defendants that this was not a sufficient description of the property, because, as they

say, in an action charging embezzlement, the property alleged to be embezzled must be described with such certainty as to identify it and give defendants full and fair information as to the charge, and be. a bar against any other prosecution for the same offense; that the property alleged to be embezzled must be described with the same certainty that would be required in an indictment for larceny; that the third count of the indictment does not specifically charge the defendants with embezzlement; that is, that it does not name the crime of embezzlement, but attempts to set forth the facts constituting that crime, and therefore the embezzlement must be charged with the same particularity that would be necessary if the indictment was for that offense, instead of for the conspiracy.

Inasmuch as the defendants were found guilty upon four counts of the indictment, and were sentenced to serve a term in the penitentiary for the same period on each count, the sentences to be concurrent, if one or more of the counts of the indictment were found to be bad, and one or more found to be good, it would be of no benefit to the defendants to have the bad ones declared so, for they would still have to serve the same number of years in the penitentiary that they would had the faulty indictment been good.

In the case of *Quinn et al. v. People,* 32 Colo. 135, it appears that the defendant was indicted for stealing a heifer from one Faris, and also the larceny of a heifer from one Brown. The cases were consolidated for trial, and the defendant was convicted in both. It was contended that the evidence was not sufficient to warrant the conviction in reference to the Faris heifer. This court said:

"We shall not consider the objection concerning the sufficiency of the evidence in the cases in which

the defendants were charged with the conversion of the Faris heifer, because the record shows that the defendants were sentenced to a term in the penitentiary of not less than eighteen months nor more than two years for the larceny of the Brown heifer, and that the sentence for the larceny of the Faris heifer runs concurrently with it.''

It appears to be the rule that where there are two or more counts in the indictment, and a general verdict of guilty is returned, if either of the counts are good it will support the verdict.—*State v. Brady,* 107 No. Car. 822; *State v. Morrison,* 24 No. Car. 9; *State v. Toole,* 106 No. Car. 736.

The fourth count in the indictment charges that the property to be wrongfully appropriated to the use of the conspirators was money of the same value as alleged in the third count. In this state that is a sufficient description, without specifying any particular coin or bank note. Section 1453, Mills' Ann. Stats., and section 1432, Mills' Ann. Stats., provide: ''Every indictment * * * shall be deemed sufficiently technical and correct which states the offense in the terms and language of this code, or so plainly that the nature of the offense may be easily understood by the jury.'' This count of the indictment not only describes the offense in the words of the statute, but also plainly enough to be readily understood by a jury, and is sufficient.—4 Enc. Pl. & Pr. 723; *Cole v. People,* 84 Ill. 216; *McCutcheon v. People,* 69 Ill. 601; *Elkin v. People,* 28 N. Y. 177; *State v. Grant,* 86 Iowa 217.

The objection made to the fifth count is that the property which it is alleged the conspirators colluded to obtain from the Denver Savings Bank by false pretenses was not sufficiently described. This objection also goes to the sixth count. It is also urged that the fifth count is insufficient because the means

by which the object of the conspiracy was to be accomplished were not described. None of these objections are good. The fifth count in the indictment charges a conspiracy to commit a substantive offense, namely, obtaining property by false pretenses. A "conspiracy" is a criminal act, and it is unnecessary to aver the means by which the conspiracy was to be carried out.—*State v. Noyes*, 25 Vt. 415; *State v. Stewart*, 59 Vt. 273; 2 Bishop's New Crim. Proc., § 207, c. 2, and cases there cited.

The defendants rely very much upon the case of *Commonwealth v. Ward*, 92 Ky. 159, wherein it is said that in an indictment charging a conspiracy to commit a crime: "If the offense be stated in generic terms, it is not sufficient to charge it in like terms; but the indictment must descend to particulars. The offense must be set forth with such clearness and certainty as to apprise the accused of the crime charged to him, and to enable the court to say, upon an inspection of the indictment, whether, if the conspiracy were carried out, he would be guilty of an offense. Every ingredient composing it must be charged." But the statute of Kentucky provides that an indictment must be direct and certain as to "the particular circumstances of the offense charged if they be necessary to constitute a complete offense," and also that the indictment must contain "a statement of the acts constituting the offense in ordinary and concise language, and in such a manner as to enable a person of common understanding to know what is intended, and with such a degree of certainty as to enable the court to pronounce judgment on conviction according to the right of the case."—Sections 124, 122, Crim. Code Ky.

Our statute provides that it is sufficient if the offense be charged in the words of the statute. *State v. Buchanan*, 5 Har. & J. 317, stated by the editors

of the American Decisions as being entitled to be regarded as one of the leading cases on the subject of conspiracy (9 Am. Dec. 571), determines that an indictment for a bare conspiracy to cheat or defraud a third person will lie even though the means of effecting the conspiracy should not be determined upon at the time; that in a prosecution for conspiracy it is sufficient to state in the indictment the conspiracy and its object. The means by which it was intended to be effected need not be stated.

In *Moore v. People*, 31 Colo. 336, it was said by this court: "It is sufficient to set forth a conspiracy according to the fact. The gist of the offense is the unlawful combination and agreement; and it has been held to be unnecessary to set forth in the indictment the means agreed upon in a conspiracy to obtain goods by false pretenses.—*State v. Crowley and others*, 41 Wis. 271." See, also, *Blum v. State*, 94 Md. 375.

In *State v. Brady*, 107 No. Car. 822, it is held that, in an indictment for conspiracy to cheat and defraud, the means to be used need not be charged. The court said that, while "there have been decisions to the contrary holding that the means must be charged," such is not the weight of authority. "The leading authorities to that effect are to be found in the United States and New York courts, in which jurisdictions the law on this subject has been modified by statute." See, also, *Thomas v. People*, 113 Ill. 531.

In *People v. Arnold*, 46 Mich. 268, in a learned opinion by Cooley, J., it is said: "An information for conspiracy need not allege the means to be employed, unless they constitute the only element of criminality. * * * An information for cheating and defrauding by false pretenses must specify the pretenses used; but an information for conspiracy

thereto need not allege the means, and the offense may be complete, even though the pretenses or the victims are not agreed on.''

To this proposition he cites a great mass of authorities, some from English courts, others from Massachusetts, Pennsylvania, Maine, New Hampshire, South Carolina, Iowa, Michigan, and Wisconsin.

There is nothing in the contention of the defendants that the property which it is alleged they sought to obtain by false pretenses is insufficiently described. It is described in the fifth and sixth counts of the indictment as ''moneys, choses in action, goods, wares, chattels, effects, and other valuable things.''

''Where an indictment alleges a conspiracy to defraud, it is not necessary to set forth and particularly describe the rights, property, goods or chattels of which defendants conspired to defraud plaintiff.'' —8 Cyc. 665; *Commonwealth v. Goldsmith,* 12 Phila. (Pa.) 632.

Under the great weight of authority, both in this country and England, the fifth count of the indictment is good, and the sixth count, setting forth the means by which the objects of the conspiracy were to be carried out at great length and particularity, is unquestionably good order under all of the authorities.

So that the court committed no error in overruling the motion to quash the last three counts of the indictment. We make no findings as to the third count, because, as hereinbefore stated, we do not deem it necessary at this time or important in this action.

Upon the overruling of the motion to quash the various counts of the indictment, defendants moved the court to require the district attorney to furnish

a bill of particulars. This motion was denied, and the ruling of the court was assigned as error.

The matter of granting or refusing a bill of particulars lies within the sound discretion of the trial court, and, where the exercise of such discretion has not been abused, it will not be reviewed by the appellate court.—8 Cyc. 671, note 35; *State v. Bacon*, 41 Vt. 526; *Com. v. Zuern*, 16 Pa. Super. Ct. 588; *State v. Brady, supra.*

Some of the authorities go to the extent of determining that whether a bill of particulars or a specification of the case should be required, is exclusively within the discretion of the presiding judge.—Wharton on Crim. Law, § 291; 1 Bishop on Crim. Proc., § 643; *Com. v. Giles*, 1 Gray (Mass.) 466; *Com. v. Wood*, 4 Gray (Mass.) 11.

Plaintiffs in error rely upon what was said by this court in *Hamilton v. People*, 24 Colo. 301. We there said:

"Moreover, if the defendant desired a bill of particulars, he should have demanded the same, and, if refused, might have had his application therefor reviewed by reserving an exception to the ruling of the court and assigning errors thereon. This was not done."

That case does not hold, and it was not intended to hold, that motions of this character are not addressed to the sound discretion of the trial court, and could only be reviewed where the record disclosed that there was an abuse of such discretion.

In this case the sixth count of the indictment is drawn with such attention to detail, and the facts and circumstances by which the object and purpose of the conspiracy was intended to be carried out are so fully set forth, that we cannot say the discretion of the court was abused. It would be difficult to determine how a bill of particulars could be more

specific than are the allegations of this count of the indictment. There was no error committed by the court in refusing the application.

Section 1460, Mills' Ann. Stats., provides: "Every person charged with murder or other felonious crime shall be furnished, previous to his arraignment, with a copy of the indictment and a list of the jurors and witnesses." The defendants in this matter were arraigned on November 18, 1905. They were not served with the list of jurors at that time. It appears that the regular panel, consisting of those who had been drawn from the box, had been depleted, until there were only twelve left. Upon the 29th of November the defendants were served with a list of those twelve men. Afterwards, and upon December 2d, a special venire of thirty men was returned into court, and on December 4th a list of the jurors in that special panel was given to the defendants. After the defendants had been served with the list of twelve jurors, they moved the court to continue the trial of the case until the next term, for the reason that between the 29th day of November and the date set for the trial, namely, the 4th day of December, they did not have an opportunity to secure the requisite information concerning the twelve jurors. This motion was overruled. Upon the service of the list of jurors summoned upon special venire, defendants moved to quash the special venire, and challenged the array, for the reason that the court was without the power to issue an open venire; there still being a large number of names in the jury box which had been selected by the county commissioners, and which had not been drawn. This motion was overruled. The defendants then asked for an adjournment "until the day after to-morrow at 10 o'clock," and the court refused that request, and stated that he would allow them

"until to-morrow at 10 o'clock" in which to make an examination of the jury list. The defendants declined to accept this, and the action of the court in these several particulars is assigned as error.

In the course of the proceedings the court made the remark that the jurors who were summoned upon the special venire were well-known citizens of Denver, having lived there for a long time, and that they were not strangers to counsel for defendants, that they were well known in the community, and that they could be investigated in a short time. Counsel for defendants did not deny that they were acquainted with the jurors, neither has there been any showing that the defendants failed to secure a fair and impartial jury, nor that they discovered anything in relation to the character of the jurors subsequent to the time when they were impaneled and sworn, which demonstrated that they were unsuitable to serve as jurors on that particular case. There is nothing to show that the defendants were prejudiced in the least by the manner of securing this jury.

We have already seen, in speaking of the grand jury which returned the indictment in this action, that, where the jurors have not been drawn and summoned according to statute, it is within the power of the court to order the issuance of a special venire. The same rule applies in the case of petit jurors that obtains in the case of grand jurors.

The defendants strenuously urged that the section of the statute which provides that they should be served with a list of the jurors previous to arraignment is mandatory, and that in case of a violation of its provisions the verdict must be set aside. They cite a number of authorities which they claim support them in this contention. None of the authorities cited, however, are in point, for the reason

that they all appear to be based upon statutes which provide that the list of jurors shall be served upon the defendants a given number of days previous to the trial—the number varying in the different states. The doctrine appears to be in those states that if the accused is not furnished with the list of jurors for the period before the trial which the statutes demand, and the matter is called to the attention of the trial court, the case must be postponed until the expiration of such period. This is entirely different from the provisions of our statute, which provide that the list of jurors shall be furnished the accused previous to arraignment, and, under our statute, the rule seems to be that, if the defendants have not been served with the list of jurors, the judgment will not be reversed on that account, unless the accused are able to show that they were prejudiced on account of the failure to receive the list previous to arraignment.

In the case of *Minich v. People,* 8 Colo. 447, it was said:

"It would seem that, since in this case the list of jurors was furnished prior to trial, and the defendant was thus given an opportunity to secure the requisite information concerning them, the reason of the law was complied with. If it appeared that the defendant was injured or put to a disadvantage by the failure to furnish this list prior to arraignment, particularly if he entered a timely protest, his conviction ought not to stand. But there is nothing in the record before us from which the slightest prejudice to his rights on this account can be inferred. Commenting upon this subject, the supreme court of Illinois say that, while it is the duty of courts to prisoners, 'among other things, to notify them in due time as to what men constitute the panel out of which the jurors for their trial

should be called, * * *. it is not, however, every little inaccuracy which may occur in this regard for which a trial should be set aside.'—*Goodhue v. State,* 94 Ill. 37. And they hold, under just such a statute as ours, that unless the accused has been 'put to a disadvantage from the irregularity, his conviction ought not to be interfered with.' '' See, also, *North v. People,* 139 Ill. 81.

While the defendants did not ask an unreasonable length of time in which to investigate the jurors, still, in the absence of a statute, that is a matter largely within the discretion of the court, and if, as the court stated, the jurors were well-known men, with whom counsel for defendants were acquainted, we cannot say, in the absence of a showing, that the defendants were materially injured or prejudiced, or that the court abused its discretion in this behalf.

It appears that three jurors, namely, Morris, Guy, and Smith, were creditors of the Denver Savings Bank. They were challenged by the defendants for cause and for favor, the challenge was overruled, and the action of the court in that respect is assigned as error. Morris testified that he was a depositor in the bank, but that he drew out the larger portion of his deposit three days before the bank failed; that there was a run on the bank three days after he drew out the greater portion of his deposit, but he paid no attention to it; that he had no opinion as to the guilt or innocence of the defendants; that he always had a high regard for everybody connected with the bank; that he did not know the defendants were connected with it; that, while he read some account of it in the papers, he paid no attention to it; that he had no bias or prejudice at all; that the amount of his money that was left in the bank did not bother him; and that he did not care for it.

The only portion of the testimony of Juror Guy

that is contained in the abstract is to the effect that, notwithstanding the fact that he was a creditor of the bank, he could go into the jury box with a clear conscience, and without any bias or prejudice. It does not appear from the abstract in what manner he was a creditor of the bank, but from the briefs of plaintiffs in error it appears that the day before the bank failed he took a check for $215, which had not been paid, and that he subsequently took an account against the bank in payment of a bill owing to him. Juror Smith testified that the Central Loan & Trust Company, in which he was interested, accepted a check for $215 previous to the bank's going into the hands of a receiver; that he could not say that he had any bias or prejudice particularly, except that they were charged with being the parties responsible for the present trouble; that if he was chosen as a juror he believed he could disabuse his mind of that bias, because he thought that until a man was proven guilty he was innocent; that his bias was but a slight one, and he thought he could remove it.

Defendants rely upon the case of *Ex parte Cornwell,* 144 Ala. 497, decided by the supreme court of Alabama, wherein it was held that the judge was incompetent to try one accused of embezzling funds of a bank in which the judge was a depositor. The Alabama case is not in point, because there is a great difference in a rule which would disqualify a juror from sitting in the trial of a case, and one which would disqualify a judge. Ordinarily upon affidavits being presented showing the prejudice, or of facts which would tend to show prejudice of the trial judge, he is left without any discretion in the matter, but is bound to send the case to another judge for trial; this, not only because of the rights of the defendant, but because it is necessary in order to preserve the respect and confidence of the people for the

courts. Judges should refrain from trying cases in which it may be said that they were even indirectly interested. With a juror the case is different. It is for the court to determine what jurors are competent and qualified, unbiased, and unprejudiced, and, except where the matter is controlled by statute, the judgment of the court as to the qualifications of the jurors is seldom subject to review. It is held in Missouri that, while the juror may be disqualified to try a case upon grounds other than those specially prescribed by statute, the ruling of the trial court on an objection to the juror for cause on ground of disqualification, which is not prescribed by statute, is conclusive on appeal, unless it is clearly and manifestly against the weight of evidence.—*Coppersmith v. Mound City R. R. Co.*, 51 Mo. App. 357.

Upon challenge of favor, the court determines as a matter of fact whether the juror stands indifferent between the parties, and the finding of the court in that particular is conclusive, and not subject to review in this court.—*Solander v. People*, 2 Colo. 48; *Jones v. People*, 6 Colo. 452.

While a challenge based upon the interest or bias or prejudice of a juror is somewhat different from that based upon the grounds of having formed an opinion, so far as the determination of his qualifications is concerned, the principle ought to be the same; and it has been determined that the statute (section 2592, Mills' Ann. Stats.) makes the trial court trier of the qualifications of jurors when challenged upon the grounds of having formed opinions, and it is for that court to determine as a matter of fact whether the juror stands indifferent, and its finding upon that is conclusive, and not subject to review by this court, except in case of gross abuse of discretion on the part of the court.—*Minich v. Peo-*

ple, supra; Babcock v. People, supra; Thompson v. People, 26 Colo. 496.

Our attention has been called to no case exactly in point upon the proposition here involved, and we know of none, except that it was held to be no objection to a juror, upon the trial of an indictment for passing counterfeit money, that the bill passed was a counterfeit of the bank of the state of South Carolina, of which corporation the juror in question was a director.—Billis v. State, 2 McCord (S. C.) 12.

In Boyle v. People, 4 Colo. 176, it was determined by the trial court that members of a cattle association, one of the purposes of which was to lend aid to the prosecution of those stealing cattle, and to the prosecution of which the association contributed, were competent to act as jurors. After a thorough review of the authorities, the action of the trial court was sustained, largely upon the ground that the matter was one which was vested in the discretion of the trial judge.

To the same effect, see Musick v. People, 40 Ill. 268; State v. Hoxie, 15 R. I. 1.

The assets of the Denver Savings Bank would neither be increased nor diminished by the conviction or acquittal of the defendants. Any interest which these jurors might have had in the affairs of the bank would neither be enhanced nor diminished as a result of their verdict. They had no monetary interest in the result of the litigation, and the only thing which could disqualify them would be that they were biased and prejudiced against the defendants. This they clearly disavowed, and the court believed them. We cannot say that the court abused the discretion which it had in such matters. We know of no instance, and counsel have called our attention to none, in which a juror was held to be disqualified, in the absence of any bias or prejudice,

to sit in a case where the defendant was accused of conspiring to defraud the juror's debtor.

The plaintiffs in error complain of the action of the trial court in permitting the people to introduce in evidence certain letters and telegrams which had been written by some of the alleged co-conspirators to others, contending that the manner of obtaining these letters and telegrams was in violation of section 7 of article 2 of the constitution, which provides: "The people shall be secure in their persons, papers, homes and effects from unreasonable searches and seizures." And that the introduction of the letters violated section 18 of article 2, which provides: "No person shall be compelled to testify against himself in a criminal case." And that like sections in the federal constitution were violated.

In relation to the manner of the taking of these letters, the testimony as found in the abstract is in effect as follows: Witness Wall, who was the teller of the Bank of Commerce of Ft. Worth, the same being one of the banks defendants were interested in, and one of those mentioned in the sixth count of the indictment, testified that he had seen Exhibits U-1 to U-36 previous to the time of the trial; that they were letters; that they had come out of Mr. Imboden's private file in Ft. Worth in the office of the Bank of Commerce, and were delivered to the deputy district attorney, Silverstein, by the witness.

In the objection to the introduction of these letters, counsel for defendants stated to the trial court that it was shown by the witness Wall that he, without any permission of either of the defendants, surrendered these letters, taking them from the private files of the defendant Imboden, to the deputy district attorney. There is nothing in the abstract to show under what circumstances they were given to Mr.

Silverstein. If there was any testimony to the effect announced by counsel, the attorneys for plaintiff in error failed to abstract it. In the view that we take of the matter, however, it is immaterial as to whether that statement is correct or not.

In relation to Exhibits W-1 to W-19, the witness Wilfley testified: "Those papers have been in my own custody—the letters were received by mail, the telegrams in the ordinary way; neither of the defendants, Imboden or Hill, ever gave me permission to give up the custody of these letters and telegrams, or any of them, or to offer them in evidence in this case." He also testified that certain letters and telegrams (Exhibits Y-1 to Y-45) were received in the ordinary course of business, addressed to witness Wilfley; that defendant Hill never gave the witness permission or authorized him to surrender possession of Exhibit Y-7, or to use the same in any way as evidence in the case; that Exhibits SS-1 to SS-11 were addressed to him in the ordinary way and in the course of business by mail and telegraph to Denver at the Denver Savings Bank.

Witness Jones testified that Exhibits A-11 to A-15, inclusive, were telegrams and letters signed by defendant Imboden, and that Mr. Imboden had never given him permission to use them in evidence in this case in any way.

The foregoing is all of the testimony that we are able to find in the abstract touching the manner in which these papers were obtained.

In support of their contention that the obtaining and introduction of these letters was in violation of the constitution, plaintiffs in error cite many authorities, none of which are in point under the facts of this case. We will only call attention to two or three of them characteristic of the balance of those cited.

*Entick v. Carrington,* 19 Howell's State Trials 1029, in which Lord Camden delivered his celebrated opinion, regarded as one of the permanent monuments of the British constitution, is much relied upon by plaintiffs in error. This case was an action of trespass for entering a party's dwelling house and breaking open his desks and boxes, and searching and examining his papers. The attempted justification was by virtue of a search warrant. The warrant was held invalid, but manifestly the question whether the papers illegally seized were competent testimony against Entick for the prosecution of a crime did not arise.

The case of *Boyd v. U. S.,* 116 U. S. 616, another great case much relied upon by plaintiffs in error, is not in point. That case determines that the fifth section of the act of Congress of June 22, 1874, c. 391, 18 Stat. 187, entitled "An act to amend the customs revenue laws," etc., which section authorized the court of the United States in revenue cases, upon a motion of the government attorney, to require the claimant to produce in court his private books, invoices, and papers, or else the allegations of the attorney to be taken as confessed, is unconstitutional and void as applied to suits for penalties, as being repugnant to the fourth and fifth amendments of the constitution. The case only goes to the extent of determining in a criminal case that neither the legislature nor the court have the power to compel a man to produce his private papers to be used against him.

*Counselman v. Hitchcock,* 142 U. S. 547, determines that, where a person is being examined before a grand jury upon investigation for certain alleged violations of the interstate commerce act, he is not obliged to answer questions which he states his answers to might tend to incriminate him.

*Blum v. State,* 94 Md. 375, determines that account books of one charged with the commission of a crime which have been turned over to receivers appointed by the court, are not admissible in evidence in a criminal case against the defendant whose estate is in the hands of a receiver.

*State v. Sheridan,* 121 Iowa 164, is authority for the proposition that a search warrant may not be issued for the sole purpose of securing testimony against one accused of a crime.

*State v. Simmons Hdw. Co.,* 109 Mo. 118, determines that section 6 of the so-called anti-trust law of Missouri (Laws 1889, p. 97), which provides: ''That some officer of every corporation shall inform under oath the secretary of state whether such company has violated the act''—was unconstitutional.

The doctrine of these cases fairly indicates the position taken by plaintiffs in error. As we shall presently see, it is entirely foreign to the facts and circumstances surrounding the obtaining of the letters in this case, as disclosed by the abstract, or to their introduction in evidence.

The provisions of section 7 of article 2 of the constitution, securing the people freedom from unreasonable search and seizure, is but a restriction on the power of the state to make such searches and seizures for its own benefit, and in no way prohibits the making of the same by private individuals.

As was said by the court in *Bacon v. U. S.,* 97 Fed. 35: ''It is held very generally that, if an individual by an illegal search or seizure obtains possession of an article or document, the state may nevertheless make use of the same as evidence against the person from whom they were wrongfully obtained to convict him of a crime; and that the inhibition found in article 4 of the amendments to the federal constitution, and in many state constitu-

tions, against unreasonable searches and seizures, is a limitation upon the power of the state to make such searches and seizures for its own benefit, and has no reference to unauthorized acts of individuals. —*Gindrat v. People,* 138 Ill. 103; *Shields v. State,* 104 Ala. 35; *Com. v. Dana,* 2 Metc. (Mass.) 329, 337; *State v. Flynn,* 36 N. H. 64; 1 Greenl. Ev. § 254a, and cases there cited. This, in our opinion, is a reasonable doctrine, when we remember that the common law has always afforded ample remedies for illegal acts committed by individuals, and that the inhibition against unreasonable searches and seizures found in the organic law owes its origin to acts of that nature which at one time were frequently committed by the sovereign on the pretense that they were necessary for his own protection or the protection of the state.''

In *Gindrat v. People,* 138 Ill. 109, it is said: ''The first 10 articles of amendment to the constitution of the United States are merely limitations upon the powers of the national government; and that which was condemned in *Boyd v. United States* was the enforced production by the parties to the 'criminal case' of evidence against themselves through and by means of an order made by the court, and a process, under the seal of the court, issued by virtue thereof, and the rulings of the court based upon such order and process, and the unconstitutional statute upon which they were predicated. So the provisions which we have above quoted from sections 6 and 10 of article 2 of the state constitution (which are similar to section 7 of article 2 of our own constitution) are limitations upon the powers of the state government, and have no reference whatever to or bearing upon the unauthorized acts of individuals.''

Consequently, it was held in *Barrett v. Fish,*

72 Vt. 18, that the delivery of private papers to a prosecuting attorney by an agent of the owner is a flagrant breach of trust, but does not make the receiving of such letters an unlawful search and seizure.

So it may be seen that the manner of obtaining these letters by the district attorney is in no sense a violation of section 7 of article 2 of the constitution.

Now, as to their admissibility as testimony: We find the rule as laid down in Greenleaf on Evidence (16th ed.), § 469f, to be: "The defendant's production of documents after the manner of a witness is a different thing from the official seizure and impounding of incriminating documents. In the latter case the defendant is not called upon to testify by producing the books. The situation is no different from the carrying away of a bundle of counterfeit bills or of stolen goods or of a murderer's weapon. No doubt, the accused is unwilling that these things should be taken, but he is not being called upon as a witness. Accordingly, the privilege is not violated, whether it is tools, clothing, or documents that are taken."

And also, in section 254a (16th ed.), 1 Greenleaf on Evidence, it is said: "It may be mentioned in this place that, though papers and other subjects of evidence may have been illegally taken from the possession of the party against whom they are offered, or otherwise unlawfully obtained, this is no valid objection to their admissibility, if they are pertinent to the issue. The court will not take notice how they were obtained, whether lawfully or unlawfully; nor will it form an issue to determine that question. This principle is regularly applied to incriminating materials—tools, liquor, documents, etc. —obtained by unlawful search of premises, or by unlawful search of the person, or by other unauthor-

ized means. On the same principle a letter or other document, obtained by fraud or other dishonorable means, is not excluded.    *    *    *''

It is the general rule that when papers are offered in evidence the court can take no notice of how they were obtained, whether legally or illegally, properly or improperly; nor will it form a collateral issue to try that question.—*Com. v. Dana,* 2 Metc. (Mass.) 329; *Legatt v. Follervey,* 14 East 302; *Jordan v. Lewis,* 14 East 306; *State v. Mathers,* 64 Vt. 101; *Barrett v. Fish, supra; Williams v. State,* 100 Ga. 511; *State v. Miller,* 63 Kan. 62; *State v. Pomeroy,* 130 Mo. 489.

So the case of *Tuttle v. People,* 33 Colo. 243, relied upon by plaintiffs in error, has no application. In that case it was determined that evidence given by a party before a coroner's jury, who was afterwards accused of the killing of the person into the cause of whose death the jury was making the inquiry, could not be used against him upon the trial, where he had not been warned at the time of giving the testimony that it might be so used, and where it was apparent that he was not testifying voluntarily. This is in harmony with the doctrines herein announced.

It will therefore be seen that the contention of plaintiffs in error that these sections of the constitution were violated is without force, and is founded upon principles entirely foreign to the one here involved.

Plaintiffs in error complain of the giving of the first instruction to the jury (in this instruction the court read the statute defining conspiracy, the statute defining embezzlement and the statute defining the obtaining of money by means of false pretenses), and that the entire instruction was so worded as to lead the jury to think that the defendants were on

trial for the crimes of embezzlement and false pretenses, respectively, and not for conspiracy.

The instruction will not bear that construction. The court specifically called the jury's attention to the fact that "the indictment in this case is for conspiracy to commit a crime against the laws of the state of Colorado," and that the third and fourth counts of the indictment charged a conspiracy to commit the crime of embezzlement. The fifth and sixth counts of the indictment charged a conspiracy to commit the crime of obtaining money by false pretenses. There is nothing in the instruction which would lead the jury to infer that the defendants were accused of any crime other than that of conspiracy. Another contention with reference to this instruction is because the whole of the conspiracy statute was read to the jury; that is: "That if any two or more persons shall agree to conspire or co-operate to do, or to aid in the doing of, a wrongful act, each of the persons so offending shall upon conviction be deemed guilty of conspiracy." It is said that the court should not have read the words "to aid in the doing of an unlawful act," because the charge in the indictment was not "to aid," but "to do." The defendants could not have been prejudiced by the reading of the statutory definition of a conspiracy, because the jury was specifically told that the third and fourth counts charged a conspiracy to commit the crime of embezzlement, and the fifth and sixth counts charged a conspiracy to commit the crime of obtaining money by false pretenses. Notwithstanding the fact that there was no charge that the defendants were accused of conspiring to aid the doing of an unlawful act, the error, if any, was not prejudicial.—*Short v. People,* 27 Colo. 184.

The instruction also recites that "the material allegations of said third and fourth counts of the

indictment are that on the 10th of September, A. D. 1904, or within three years prior to the finding of the indictment, the defendants did," etc. The same phrase, "or within three years prior to the finding of the indictment," is also contained in that portion of the instruction relating to the fifth and sixth counts of the indictment. It is said that this is erroneous because the words, "within three years prior to the finding of the indictment," are not contained in the indictment itself. This does not appeal to us as being erroneous.

Plaintiffs in error objected to the giving of the third and fourth instructions. The objection raised to these instructions was upon the ground that the indictment does not state a crime. In the former part of this opinion we have held that the indictment was sufficient. Consequently there is nothing to this objection.

Another objection raised to instructions 3 and 4 is that the "jury are instructed if they believe from the evidence beyond a reasonable doubt that on the 10th of September, A. D. 1904, or within three years prior to the finding of the indictment, defendants did," etc. The phrase, "or within three years prior to the finding of the indictment," is said to be erroneous because it extends the time beyond the 10th of September, the date alleged in the indictment as that upon which the conspiracy was entered into. The time when the offense was committed need not be accurately stated in the indictment, and in conspiracy charges time is not of the essence of the crime. While the indictment may charge the offense as having been committed upon a specified date, the proof may show that it was committed at any time previous to such a date and within the period of the statute of limitations, which is three years previous to the finding of the indictment. The only authority

which defendants cite as to this so-called error was *State v. Burnham,* 15 N. H. 396. We have read that case, and are unable to discover that it has any bearing upon the question.

The seventh instruction to the jury is as follows:

"The court instructs the jury that under the law and the evidence in this case you may convict either or both of the defendants, provided you find from the evidence, beyond a reasonable doubt, that those, the one or both to be convicted, conspired together or with some other person or persons jointly indicted herein, as hereinabove defined in this instruction, or you may find either or both not guilty."

The objection urged to this instruction is that it assumes that one or both of the defendants are to be convicted. The instruction does not bear that construction. The jury is told that it may convict, provided it finds from the evidence, beyond a reasonable doubt, that the party convicted entered into the conspiracy. Under this instruction it was not authorized in finding a verdict of guilty upon any other hypothesis than that of the proof of defendant's guilt. The instruction also informs the jury that it may find either or both of the defendants not guilty. This instruction correctly states the law.

Instruction No. 8, which was objected to by defendants, is as follows:

"Though the jury may believe from the evidence that when the parties came together upon the 10th day of September, 1904, or at any time prior thereto and within three years prior to October 17, 1905, the date of the finding of the indictment herein, they met for some unlawful purpose, yet, if the jury further believe from the evidence, beyond a reasonable doubt, that they then joined in attempting to

accomplish the unlawful purpose stated in the indictment or in any count thereof, in manner and form as herein alleged, then this would be sufficient evidence of a conspiracy to accomplish such purpose, and it is unnecessary to prove any previous plan or understanding to that effect by the parties.''

This instruction was taken from Sackett on Instructions to Juries, p. 673. The objection raised to it is that it assumes that the parties came together. The undisputed testimony in the case shows that the parties had met on the 10th of September, 1904, and this was not a controverted fact in the case, and, while it may be said that the defendants, not having introduced any testimony upon their own behalf, did not admit the truth of any of the testimony introduced by the people, still the assumption contained in this instruction that the parties came together is not a reversible error. The court was instructing the jury as to the law of conspiracy; that is, that, even though they met for a lawful purpose, yet, having so met, they joined in attempting to accomplish the unlawful purpose stated in the indictment, this would be evidence of a conspiracy. The gist of the instruction is that the purpose for which they met was immaterial, provided that at such meeting they did the unlawful act complained of. The reasoning of the court in *Covington v. People,* 36 Colo. 183, in relation to instruction No. 8, is conclusive, if not as to the correctness of this instruction, at least as to its not being prejudicial to the rights of the defendants.

The ninth instruction given to the jury is as follows:

''A common design and unlawful purpose by two or more persons is the essence of the charge of conspiracy, and this common design or unlawful purpose must be proved in order to warrant a con-

viction, either by direct evidence, or by proof of
such circumstances as naturally tend to prove it and
sufficient in themselves to satisfy the jury of the
existence of such common design beyond a reason-
able doubt.''

While this instruction is taken from Sackett's
Instructions to Juries, p. 673, it is not a model of
exactness, and it would have been better had the
common design been more particularly defined.
Plaintiffs in error, however, could not possibly have
been prejudiced on account of the faulty expression,
"common design," because the first instruction cor-
rectly defines the conspiracy by saying that the
statute provides that, if any two or more persons
shall agree, conspire, or co-operate to do, or to aid
in the doing of, an unlawful act, each of the persons
so offending shall on conviction be deemed guilty of
conspiracy.  The same instruction further says that
one material allegation of the third count is that the
defendants "did unlawfully and feloniously agree,
conspire, and co-operate together" to do the particu-
lar thing in the third count mentioned, and so as to
the fourth, fifth and sixth counts, so in the second
instruction the crime of conspiracy is again correct-
ly defined, and so in the third, fourth, and eleventh.
The jury was repeatedly told that the design and
purpose which was formed by the alleged conspira-
tors must be for the commission of the offenses
mentioned in the indictment, and they could not
possibly have understood that any common design,
whether lawful or otherwise, would amount to a con-
spiracy.

In the case of *Short v. People,* 27 Colo. 175, it
appears that the trial court instructed the jury that a
conspiracy is an agreement between two or more
persons to do a lawful act in an unlawful manner.

This was clearly wrong, as determined; but it was said:

"As an abstract proposition, therefore, the instruction of the court in this case to the contrary is wrong. But in view of the fact that the object of the conspiracy charged in each count of these two informations was burglary, which in itself is a crime under our statute, no possible harm could result to the defendants from the erroneous instruction complained of. It was a clear case of harmless error, though the instruction should not have been given."

And so in this case. Each count of the indictment charged the conspiracy to do an unlawful act, and the jury must have understood that the "common design" mentioned in instructions 9 and 10, in which the same expression is used, was for the purpose of doing this unlawful act, and not for the purpose of perpetrating some other thing which might or might not have been unlawful. The two phrases, "common design" and "unlawful purpose," must be construed as having been used as synonymous, and, while the instruction standing alone is not absolutely and technically correct, the giving of it could not have misled the jury or have prejudiced the defendants. This reasoning applies with equal force to instruction No. 10 which was also objected to by plaintiffs in error.

Plaintiffs in error complain of the giving of several other instructions to the jury, and of the refusal of the court to give several instructions requested by them. Without discussing the instructions that were given over the objection of the defendants and those tendered by the defendants which were refused, we will content ourselves by saying that we have examined them carefully, together with the authorities cited by plaintiffs in error in support of their contentions, and have reached the

conclusion that the instructions given by the court were correct expositions of law, applicable to this case, and that those which were asked and refused were either incorrect. inapplicable, or were given in substance.

Plaintiffs in error also contend that the embezzlement statute, being section 1 of the Session Laws of 1893, upon page 119 (3 Mills' Rev. Stats. 1255), is unconstitutional, and is in violation of the fourteenth amendment to the constitution of the United States. This section provides:

"Whoever embezzles or fraudulently converts to his own use   *   *   *   money, goods or property delivered to him which may be the subject of larceny   *   *   *   shall be deemed guilty of larceny and punished accordingly. If any officer, agent, clerk or servant of any incorporated company, or if a clerk   *   *   *   of any person   *   *   *   embezzles or fraudulently converts to his own use without the consent of his company   *   *   *   any money   *   *   *   of such company   *   *   *   which has come into his possession or is under his care by virtue of such office or employment, he shall be deemed guilty of larceny.   If any banker or broker, or his servant or agent or any officer of any bank   *   *   *   fraudulently converts to his own use any bullion, money   *   *   *   or other personal property belonging to and in possession of such bank   *   *   *   or belonging to any person and deposited therein or therewith, he shall, whether intrusted with the custody thereof or not, be deemed guilty of larceny."

The contention is that it takes a less degree of proof to convict an officer of a bank than it does any other person; that is, in order to convict one not an officer of a bank, it must be shown that the property embezzled has come into his possession or is under his care by virtue of his employment, while in the

case of an officer of a bank the property need not be intrusted in the custody of the officer, but that it is sufficient if deposited in the bank.

We think that what was said in the case of *Robertson v. People,* 20 Colo. 279, is a sufficient answer to this contention. There the court said:

"We think this claim is fallacious, and that the act is not within the class of legislation inhibited by these provisions of the constitution. It is in a sense class legislation, but not in the invidious sense that renders it obnoxious to the objections urged here. The law of the land is said to mean a law binding upon every member of the community under similar circumstances.—*Wally's Heirs v. Kennedy,* 2 Yerg. (Tenn.) 554. And when the law applies to all persons engaged in a certain occupation or business, and each one is without distinction amenable to its provisions, solely because he pursues such occupation or business, it is then 'binding upon all persons of the community under similar circumstances.'"

If the three subdivisions of this section had been placed in different sections—that is, one defining embezzlement by the ordinary citizen, another by an employee, and the third that of an officer or agent or servant of a bank—there could be no question but what the section in relation to bankers would be valid because it would apply to all persons engaged in that business. If that be true, then there is no reason why the same rule might not obtain where the three provisions are embraced in the same section. In any event, whether this statute is in violation of the constitution or not, it will not benefit the plaintiffs in error to so determine, because the remaining two counts of the indictment are based upon a statute the validity of which is not questioned.

The last contention of plaintiffs in error is that they were convicted four times for one offense, be-

cause, as they say, it was all one transaction. This does not appeal to us with much force, either as to the merits of the contention, or as to any prejudice which the defendants have suffered on account thereof. While they were convicted upon each of the four counts, there was but one sentence imposed; that is, they were sentenced for the same term upon each count, and the sentence was to run concurrently, so that while convicted of four offenses they are only suffering one sentence.

In the judgment of this court the defendants had a fair and impartial trial, and the judgment of the district court will not be disturbed. It will therefore be affirmed.

Decision *en banc*.                    *Affirmed.*